**FRY**

v.

**SURF CITY, INC. et al.**

2006-Ohio-3092.]

Court of Common Pleas of Ohio,
Lucas County.

No. CI05–2471.

Decided April 5, 2006.

Stephen P. Collier and Anthony E. Turley, for plaintiff.

Benjamin W. Crider and Jonathon L. McGee, for defendant Bureau of Workers' Compensation.

Christopher F. Parker, for defendant Surf City, Inc.

JACK ZOUHARY, Judge.

{¶ 1} This matter is before the court on the cross-motions for summary judgment filed by plaintiff Erica E. Fry and defendant Ohio Bureau of Workers' Compensation.

{¶ 2} Upon review of the parties' pleadings and briefs, the evidence, the arguments of counsel presented at a hearing on March 6, 2006, and the applicable law, the court denies plaintiff's motion for summary judgment and grants the bureau's motion for summary judgment.

## INTRODUCTION

{¶ 3} The issue presented by both summary judgment motions is the constitutionality of R.C. 4123.93 and 4123.931 (the Ohio workers' compensation subrogation statutes) as amended by the 124th Ohio General Assembly in 2002 in Sub.S.B. No. 227 ("S.B. 227"), effective April 9, 2003. These statutes create an independent right of recovery in favor of statutory subrogees against third parties. The statutory subrogee is subrogated to a plaintiff's rights against third-party tortfeasors with respect to past, present, and estimated future payments of workers' compensation benefits.

{¶ 4} The changes made to R.C. 4123.931 in S.B. 227 were in response to the Ohio Supreme Court's decision in *Holeton v. Crouse Cartage Co.*,[1] which held that former R.C. 4123.931 violated Sections 2, 16, and 19 of Article I of the Ohio Constitution. While the *Holeton* court found the prior subrogation statute unconstitutional, it also opined that a subrogation statute would not necessarily violate Section 35, Article II of the Ohio Constitution (the workers' compensation provision) and, therefore, the legislature may constitutionally enact a subrogation statute.[2]

{¶ 5} Fry alleges that the new statutes violate Sections 2, 16, and 19 of Article I of the Ohio Constitution and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and asks the court to grant summary judgment against the bureau and find that the workers' compensation subrogation statutes are unconstitutional.

{¶ 6} The bureau asks the court to find that the workers' compensation subrogation statutes are constitutional and therefore enforceable against any recovery made by Fry as a result of the instant lawsuit.

## FACTS

{¶ 7} On December 21, 2004, Fry was injured while working for defendant Surf City, Inc., an employer participating in the state insurance fund.[3] The complaint alleges that Fry's injury resulted from an employer intentional tort committed by Surf City. At the time of the accident, Fry was in the course and scope of her employment. As a result of her injuries, Fry filed a claim for workers' compensation benefits with the bureau. The bureau allowed the claim, has already paid medical bills and benefits on Fry's behalf, and may pay additional compensation and benefits in the future.

## LAW AND ANALYSIS

### 1. Summary Judgment Standard

{¶ 8} Civ.R. 56(C) provides that "before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving

1. *Holeton v. Crouse Cartage Co.* (2001), 92 Ohio St.3d 115, 748 N.E.2d 1111.

2. Id. at 120, 748 N.E.2d 1111.

3. Wentzel Affidavit, at ¶ 2.

party, that conclusion is adverse to the party against whom the motion for summary judgment is made." [4]

## 2. Constitutional Challenge Standard

{¶ 9} The court recognizes that all legislative enactments enjoy a strong presumption of constitutionality.[5] Further, the court "must apply all presumptions and pertinent rules of construction so as to uphold, if at all possible, a statute * * * assailed as unconstitutional." [6] Consequently, a challenging party must prove any assertions of unconstitutionality beyond a reasonable doubt.[7]

## 3. R.C. 4123.93 and 4123.931 (as enacted in S.B. 227) do not violate Sections 16 and 19 of Article I of the Ohio Constitution

{¶ 10} In analyzing the prior statute, the *Holeton* court cited earlier decisions holding that the state of Ohio has a legitimate interest in preventing double recoveries and that "it is constitutionally permissible for the state to prevent a tort victim from recovering twice." [8] The Ohio Supreme Court merged its analysis of Section 16 and Section 19 into one and stated:

> Whether expressed in terms of the right to private property, remedy, or due process, the claimant-plaintiff has a constitutionally protected interest in his or her tort recovery to the extent that it does not duplicate the employer's or bureau's compensation outlay.[9]

*Holeton* then called into question two provisions of the former statute, ultimately finding that they violated the Constitution. The first provision found unconstitutional in former R.C. 4123.931(A) gave the statutory subrogee a right of subrogation with respect to "estimated future values of compensation and medical benefits," and the second provision questioned was found in former division (D) regarding settlements.[10]

---

4. *State ex rel. Zimmerman v. Tompkins* (1996), 75 Ohio St.3d 447, 448, 663 N.E.2d 639.

5. *State ex rel. Patterson v. Indus. Comm.* (1996), 77 Ohio St.3d 201, 672 N.E.2d 1008.

6. *State v. Dorso* (1983), 4 Ohio St.3d 60, 4 OBR 150, 446 N.E.2d 449.

7. *In re Columbus Skyline Secs., Inc.* (1996), 74 Ohio St.3d 495, 660 N.E.2d 427.

8. *Holeton*, 92 Ohio St.3d at 121–122, 748 N.E.2d 1111.

9. Id. at 122, 748 N.E.2d 1111.

10. Id.

### a. Fry's reliance on Bartlett v. Ohio is misplaced

{¶ 11} Fry argues in her motion that the General Assembly's attempt to remedy the constitutional defects identified in *Holeton* came up short and that the statute remains unconstitutional. Fry posits that under *Bartlett v. State*,[11] the legislature cannot require a court to treat as valid laws that were previously rendered unconstitutional by simply reenacting them.

{¶ 12} Plaintiff's reliance on *Bartlett* is misplaced. If Fry's reading of *Bartlett* is correct, then the legislature could never go back to legislation and correct prior constitutional flaws. Further, *Bartlett* points out that the "power of the legislature to validate any void or ineffectual act is limited to such acts as it might have originally performed or authorized,"[12] and *Holeton* recognizes that the legislature may constitutionally enact a subrogation statute.[13] Thus, the legislature did not act unconstitutionally by enacting S.B. 227.

### b. Reimbursements of estimated future values are not burdensome for claimants

{¶ 13} The *Holeton* court found that former R.C. 4123.931(A), by giving the statutory subrogee a current collectible interest in estimated future expenditures, created a situation in which a prohibited taking might occur when the statute operated not to prevent the claimant from keeping a double recovery but to provide the statutory subrogee with a windfall at a claimant's expense. "In other words, R.C. 4123.931(A) requires the claimant to reimburse the bureau or self-insuring employer for future benefits that the claimant may never receive."[14] This would happen when compensation the statutory subrogee is obligated to pay is terminated earlier than what was estimated for purposes of determining future values. The former statute irrationally and arbitrarily placed the risk of overestimating future benefits on the claimant.[15]

{¶ 14} Fry argues that the new statute regarding estimated future expenditures also overburdens an injured worker by requiring the worker to immediately disgorge the portion of the recovery deemed to be estimated future expenses. Fry's counsel stated at oral argument that the statute also places an unreason-

---

11. *Bartlett v. State* (1905), 73 Ohio St. 54, 75 N.E. 939.

12. Id. at 58, 75 N.E. 939.

13. *Holeton*, 92 Ohio St.3d at 120, 748 N.E.2d 1111.

14. Id. at 123, 748 N.E.2d 1111.

15. Id. at 125, 748 N.E.2d 1111.

able burden on the worker to establish a trust account and bear any attendant administration costs. The court finds these contentions inaccurate and meritless.

{¶ 15} In S.B. 227, the legislature created a system that guarantees that any risk of estimating future values is not placed on a claimant. Under new R.C. 4123.931, the statutory subrogee does not have a current collectible interest in estimated future expenditures. The new statute does not require the claimant to reimburse the statutory subrogee for future benefits that the claimant may never receive. To accomplish this, new divisions (E) and (F) of R.C. 4123.931 permit the claimant to establish an interest-bearing trust account for the full amount of the subrogation interest that represents estimated future payments of compensation and benefits. If the claimant establishes a trust account, every six months the statutory subrogee must provide a payment notice to the claimant, listing the amounts paid on the claimant's behalf. The claimant must then reimburse the subrogee from the trust account in accordance with the notice. If the statutory subrogee's duty to continue making payments is terminated, any amount that remains in the trust account, after final reimbursement is paid to the subrogee, must be paid to the claimant or the claimant's estate. If a claimant does not establish a trust account under division (E)(1), the claimant must, within 30 days after receipt of funds from the third-party tortfeasor, pay the statutory subrogee the full amount of the subrogation interest that represents future benefits.[16]

{¶ 16} The *Holeton* court found that former R.C. 4123.931 was irrational and arbitrary because it imposed the risk of liability for overestimating future expenditures upon the claimant. The new statute removed this risk by providing for the creation of a trust account. There is now no risk that the amount of future benefits will be overestimated, as the subrogee is reimbursed only for amounts actually expended up to the amount placed in trust.

{¶ 17} Further, the creation of a trust account does not pose an undue burden upon a claimant, for several reasons. First, it is the claimant's option to create the trust account; under division (F), the claimant may elect to pay the future benefits up front. Second, even if Fry is correct that the claimant would bear the cost of the trust account, she has not presented any evidence that precludes a finding that the cost would be minimal, if it exists at all, so as not to present an undue burden; and new R.C. 4123.931(E)(2) authorizes the claimant to use the interest that accrues on the trust account to pay the expenses associated with the account. Finally, once the trust account is established, the burden is on the subrogee to submit a payment notice to the claimant every six months,[17] and the

---

16. R.C. 4123.931(F).

17. R.C. 4123.931(E)(3).

new statute makes no provision for reimbursement in the absence of a timely payment notice. Fry also relies on *McKinley v. Ohio Bur. of Workers' Comp.*,[18] which held that R.C. 4123.931 effects a complete taking of property without due process because it requires a plaintiff to place all settlement monies into the trust account.[19] *McKinley* misinterprets the statute, however, as division (E) requires only monies representing the future interest to be placed into the trust account. Thus, the court finds *McKinley* unpersuasive.

{¶ 18} Fry also argues that there may be less burdensome methods for eliminating the risk of overestimating future benefits, such as granting the statutory subrogee a credit or offset against future payments. While there may or may not be alternatives to the solutions selected by the General Assembly, the court may not engage in legislative fact-finding.[20] The legislature is not bound to pick the least burdensome alternative that can be devised. It is enough that the scheme proposed is reasonable and does not impose any irrational or arbitrary risk upon the claimant.[21] The court's power extends only to determining whether the method chosen by the legislature is clearly unconstitutional.[22]

{¶ 19} The trust fund created by the General Assembly in S.B. 227 corrects the constitutional infirmity cited by *Holeton*. There is now no risk to the plaintiff that future benefits may be estimated too high. The court finds that the trust account provision in R.C. 4123.931 is a reasonable, rational, nonarbitrary response to the legitimate concern of preventing double recoveries and complies with the holding in *Holeton*. Thus, S.B. 227, as it addresses the estimated future value issue, is constitutional.

### c. Settlements

{¶ 20} The *Holeton* court found that former R.C. 4123.931(D) established a framework whereby an unconstitutional taking of the claimant's property or a denial of remedy by due process could occur by distinguishing between third-party claims that are tried and third-party claims that are settled.[23] Under the

---

18. *McKinley v. Ohio Bur. of Workers' Comp.* (Dec. 27, 2005), Washington C.P. No. 05–OT–122. *McKinley* is currently on appeal to the Fourth District Court of Appeals (case No. 06 CA 7).

19. Id. at 5–6.

20. See *FCC v. Beach Communications, Inc.* (1993), 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211.

21. See *Direct Plumbing Supply Co. v. Dayton* (1941), 138 Ohio St. 540, 38 N.E.2d 70.

22. *Desenco, Inc. v. Akron* (1999), 84 Ohio St.3d 535, 538, 706 N.E.2d 323. See, also, *Holeton*, 92 Ohio St.3d at 137, 748 N.E.2d 1111 (Moyer, C.J., dissenting).

23. *Holeton*, 92 Ohio St.3d at 125–126, 748 N.E.2d 1111.

former statute, in the case of an award or judgment following trial, the claimant could obtain special jury interrogatories indicating that the award or judgment represented different types of damages. By obtaining this, the claimant could show that certain damages were not subject to reimbursement because they did not represent workers' compensation benefits. In contrast, in a settlement, the entire amount was subject to the statutory subrogee's subrogation right, regardless of the manner in which the settlement or compromise was characterized. The claimant was prevented from showing that portions of the settlement did not represent workers' compensation benefits. In other words, reimbursement could be from proceeds that did not constitute a double recovery.[24]

{¶ 21} Fry argues that S.B. 227's settlement provisions remain unconstitutional. In support of her argument, Fry again cites *McKinley v. Ohio Bur. of Workers' Comp.*,[25] which, in addition to holding that S.B. 227's version of R.C. 4123.931 effects a complete taking of property without due process because it requires a plaintiff to place all settlement money into the trust account, held that in a settlement situation there is no provision for the plaintiff to show that there was no double recovery.[26] The court finds *McKinley* to be incorrect on the latter issue, too.

█ {¶ 22} The constitutional defects found in *Holeton*, and as alleged by Fry, do not exist in the new workers' compensation subrogation statute. First, the new statute establishes a pro rata formula to determine the interests of the statutory subrogee and the claimant in any settlement amount.[27] This formula is applied equally to settlements and to awards following trial.[28] Thus, the new statute does not distinguish between cases going to trial and cases that are settled.

{¶ 23} Moreover, the formula ensures that the statutory subrogee is reimbursed only from amounts that would constitute an impermissible double recovery. The formula works to provide a pro rata distribution of the "net amount recovered" by the claimant through either settlement or trial award to the statutory subrogee and the claimant.[29] Never allowing the statutory subrogee to recoup more than its pro rata share of the "net amount recovered," the statute

---

24. Id.

25. (Dec. 27, 2005), Washington C.P. No. 05–OT–122.

26. Id. at 5–6.

27. R.C. 4123.931(B).

28. R.C. 4123.931(B) and (D).

29. Id.

ensures that the subrogee does not unconstitutionally take more from the claimant than what would represent a double recovery.

{¶ 24} Further, in a settlement situation, contrary to the holding in *McKinley*, the new statute allows ample opportunity for the plaintiff to demonstrate there was no double recovery. R.C. 4123.931(B) provides two methods to determine the statutory subrogee's interest in a settlement situation. The first method is the application of the mathematical formula. This seems to be the only method recognized by *McKinley*. But division (B) also provides a second, alternative method to the formula. Under the second method, the net amount recovered in a settlement may be divided and paid on a "more fair and reasonable basis that is agreed to by the claimant and the statutory subrogee." Division (D) further provides an alternative dispute-resolution process that may be used to resolve the issue. The use of the alternative formula, coupled with the discretionary use of an alternative dispute resolution, either formal or informal, gives a claimant an opportunity to provide evidence as to what portions of a net amount recovered may or may not represent a double recovery. Finally, the plaintiff in *McKinley* used a third alternative to determine the bureau's interest—he brought a declaratory judgment action. In such an action, a claimant has the opportunity to demonstrate to the trial court what parts of the settlement are not a double recovery.

{¶ 25} The new subrogation statute provides ample opportunity for a claimant to prove what amount of the settlement represents a double recovery. In a trial, evidence may be presented and jury interrogatories may be submitted, under Civ.R. 49, to determine what parts of the damages represents workers' compensation benefits and what parts represent the claimant's unreimbursed interests. If the parties wish to settle, the statute provides for the use of alternative dispute-resolution processes, and the parties may use the statutory formula or distribute the settlement proceeds on any "fair and reasonable basis that is agreed to by the claimant and the statutory subrogee." Accordingly, the court concludes R.C. 4123.93 and 4123.931 as enacted in S.B. 227 do not violate Sections 16 and 19, Article I of the Ohio Constitution, as the new statutes afford claimants a fair and reasonable opportunity to demonstrate what part of a settlement or judgment represents a double recovery.

4. **R.C. 4123.93 and 4123.931 (as enacted in S.B. 227) do not violate the Equal Protection and Benefits Clause of the Ohio Constitution or the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution**

{¶ 26} The equal protection analysis given by Ohio courts under the Ohio Constitution and the United States Constitution is "functionally equiva-

lent."[30]   Ohio courts have consistently applied the rational-basis test when addressing constitutional challenges to workers' compensation statutes,[31] and the *Holeton* court used this test in analyzing the equal protection arguments against former R.C. 4123.931. "Under an equal protection analysis, the challenged statute will be upheld if the classification bears a rational relationship to a legitimate governmental interest or if reasonable grounds exist for drawing the distinction."[32]   At the oral argument, the parties agreed that the court must use the rational-basis test in analyzing the subrogation statute.

{¶ 27} Under the rational-basis test, a challenged statute must be upheld if there exists any conceivable set of facts under which the classification rationally furthers a legitimate legislative objective.[33]   The party challenging the constitutionality of an enactment has the burden to negate "every conceivable basis which might support it."[34]

{¶ 28} R.C. 4123.931 is a rational response to the legitimate state concern of minimizing losses to the workers' compensation fund caused by the acts of third-party tortfeasors. The *Holeton* court agreed that this is a legitimate state concern, to the extent that it prevents a double recovery.[35]   As analyzed above, under the amended version of R.C. 4123.931, the statutory subrogee recoups only to the extent that there is a double recovery. Further, the claimant is given substantial opportunity in either a trial or a settlement to prove amounts that would not represent a double recovery. Thus, R.C. 4123.931 is a rational response to a legitimate state concern.

{¶ 29} Fry also argues that R.C. 4123.931 creates an unreasonable classification by singling out for special, less favorable treatment those workers injured on the job by an intentional tort by their employer. Fry asserts that in an intentional-tort situation, the victim is required to indirectly contribute a portion of any amount recovered to the employer tortfeasor, since any subrogation recovery will reduce the employer's contributions to the bureau.

---

30.   *Desenco, Inc. v. Akron*, 84 Ohio St.3d at 544, 706 N.E.2d 323.

31.   See *State ex rel. Doersam v. Indus. Comm.* (1989), 45 Ohio St.3d 115, 543 N.E.2d 1169,

32.   *Holeton*, 92 Ohio St.3d at 131, 748 N.E.2d 1111.

33.   *Schwan v. Riverside Methodist Hosp.* (1983), 6 Ohio St.3d 300, 301, 6 OBR 361, 452 N.E.2d 1337; *Heller v. Doe* (1993), 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257.

34.   *Heller*, 509 U.S. at 320, 113 S.Ct. 2637, 125 L.Ed.2d 257; *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.* (1999), 87 Ohio St.3d 55, 60, 717 N.E.2d 286.

35.   *Holeton*, 92 Ohio St.3d at 121–122, 748 N.E.2d 1111.

{¶ 30} Fry premises her argument on the erroneous assumption that an employer's workers' compensation contributions are reduced when a subrogation recovery is made from an intentional-tort claim. First, in this case, the employer has not yet been found to have committed an employer intentional tort. However, this is a facial challenge, and not one as applied, so the court will look at other situations in its analysis. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid. The fact that [a statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid * * *." [36]

{¶ 31} R.C. 4123.931 makes no distinction between claimants of an employer intentional tort and other workers' compensation claimants. Under *Jones v. VIP Dev. Co.,*[37] injured workers may pursue both an employer intentional-tort action and statutory benefits. What Fry's argument misses is that injuries to her as an alleged intentional-tort victim and injuries caused by third-party tortfeasors through nonintentional torts in the workplace both occur on the job and trigger the payment of workers' compensation benefits. There is no disparity in treatment between claimants alleging an intentional tort and claimants not alleging an intentional tort. Claimants in both situations receive statutory workers' compensation benefits, and both are treated equally under R.C. 4123.931. In each instance, the bureau is subrogated to amounts paid on behalf of the workers' compensation claimant.

{¶ 32} Further, the facts in this case do not support Fry's argument. Surf City, Inc. is a state fund employer.[38] In cases involving state fund employers, the statutory subrogee is the Administrator of Workers' Compensation. The administrator, however, as a matter of policy, does not in any way credit an employer's account when there has been a judicial finding of liability in intentional tort, nor does the administrator adjust that employer's actuarial experience if money is collected through subrogation.[39] Thus, if a state fund employer is found to have committed an intentional tort, it will not be rewarded for its misconduct. Any amount recovered as a result of an intentional-tort lawsuit will be deposited into

---

36. *United States v. Salerno* (1987), 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697. See, also, *Emerson Elec. Co. v. Tracy* (2000), 90 Ohio St.3d 157, 162, 735 N.E.2d 445 (Cook, J., dissenting).

37. *Jones v. VIP Dev. Co.* (1984), 15 Ohio St.3d 90, 98–99, 472 N.E.2d 1046.

38. Wentzel Affidavit, at ¶ 2.

39. Id. at ¶ 2 and 4.

the state insurance fund. The statutory scheme simply prevents the claimant from receiving a double recovery.

{¶ 33} Fry concludes by arguing that equal protection requires that injured workers be treated similarly to tort plaintiffs in general and that the General Assembly may not enact a workers' compensation subrogation statute until it enacts a valid collateral-benefits-offset statute covering tort claims in general. This equal protection argument was raised in *Holeton,* protesting that the former statute created "arbitrary classifications of tort victims—employees injured on the job and employees injured off the job." [40] The court rejects Fry's argument for the same reasons that the *Holeton* court rejected it. [41]

## CONCLUSION

{¶ 34} For the foregoing reasons, the court finds that R.C. 4123.93 and 4123.931 as amended by S.B. 227 (the workers' compensation subrogation statute) do not violate Sections 2, 16, or 19 of Article I of the Ohio Constitution or the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Accordingly, no genuine issue as to any material fact remains to be litigated as between Fry and the bureau; construing the evidence most strongly in Fry's favor, reasonable minds can only reach a conclusion that is adverse to plaintiff; and the bureau is entitled to judgment as a matter of law on its claims that the subrogation statute is constitutional and that the bureau's statutory right to recover the amounts that it paid to or on behalf of Fry is enforceable against any recovery that Fry may make against Surf City in this action. [42] Fry, however, is not entitled to judgment as a matter of law on her claim that the subrogation statute, specifically R.C. 4123.931, is unconstitutional. [43]

## JUDGMENT ENTRY

{¶ 35} It is ordered that plaintiff Erica E. Fry's motion for summary judgment against defendant Ohio Bureau of Workers' Compensation (filed August 10, 2005) is denied.

{¶ 36} It is further ordered that defendant Ohio Bureau of Workers' Compensation's motion for summary judgment (filed September 16, 2005) is granted.

40. *Holeton,* 92 Ohio St.3d at 131–132, 748 N.E.2d 1111.

41. Id.

42. See the bureau's answer and cross-claim (filed September 19, 2005), ¶ 1, and the bureau's response to the plaintiff's motion for summary judgment and motion for summary judgment (filed September 16, 2005) at 1.

43. See first amended complaint (filed July 18, 2005), second claim for relief.

{¶ 37} It is further ordered that the second claim for relief set forth in plaintiff's first amended complaint (filed July 18, 2005) is dismissed with prejudice.

{¶ 38} It is further ordered that the dates set forth in the Pretrial Order of February 23, 2006, are confirmed.

So ordered.