**McKINLEY, Appellee,**

**v.**

**OHIO BUREAU OF WORKERS' COMPENSATION, Appellant.**

[Cite as *McKinley v. Ohio Bur. of Workers' Comp.*,
170 Ohio App.3d 161, 2006-Ohio-5271.]

Court of Appeals of Ohio,
Fourth District, Washington County.

No. 06CA7.

Decided Sept. 26, 2006.

Jim Petro, Attorney General, and Jonathon L. McGee, Benjamin W. Crider, and Lee M. Smith, Special Counsel, for appellant.

T. Jeffrey Beausay, for appellee.

McFARLAND, Judge.

{¶ 1} The Ohio Bureau of Workers' Compensation appeals the decision of the Washington County Court of Common Pleas, holding R.C. 4123.93 and 4123.931 unconstitutional. The appellant contends that the statutes do not violate appellee Jeff McKinley's interest in his tort recovery, effect an impermissible taking, deprive the appellee of his due process rights, or violate the Equal Protection Clause. Because we determine that the current versions of R.C. 4123.93 and 4123.931 were drafted to comply with the holding in *Holeton v. Crouse Cartage* (2001), 92 Ohio St.3d 115, 748 N.E.2d 1111, and do not violate Sections 2, 16, or 19, Article I of the Ohio Constitution, we reverse the judgment of the trial court.

## I. Facts

{¶ 2} On July 13, 2003, the appellee fell while working inside a furnace or boiler hopper at the Von Roll America, Inc., Waste Technologies facility in East Liverpool, Ohio. The appellee was acting in the course and scope of his employment at the time of his fall. As a direct result of his fall, the appellee was left hanging inside a cone-shaped receptacle, where he received severe burns to his legs and other parts of his body. At the time he sustained the injury, the appellee was employed by Safway Services, Inc. Safway is not a self-insured employer for the purposes of workers' compensation.

{¶ 3} The appellee sued Von Roll America, Inc. His claims against Von Roll America were settled out of court for an undisclosed amount of money. No jury trial took place. The appellee also filed a claim for benefits with the appellant, which the appellant allowed. As of November 22, 2005, the appellant had paid the appellee compensation in the amount of $398,303.17. Of this amount, the appellant paid $57,788.43 on the workers' compensation claim and $340,514.74 for the appellee's medical benefits. The appellant claims a statutory lien upon the settlement proceeds in the amount of $885,808.56. The appellant asserts that through R.C. 4123.93 and 4123.931, it has an independent right of recovery in the net amount recovered by the appellee and is subrogated to the appellee's rights against the tortfeasor with respect to the past, present, and estimated future payments of compensation and benefits.

{¶ 4} The appellee brought an action in the Washington County Court of Common Pleas, challenging the constitutionality of R.C. 4123.93 and 4123.931, the Ohio workers' compensation subrogation statute. He asked the court of common pleas to declare that R.C. 4123.931 violated Sections 16 and 19, Article I of the Ohio Constitution. He also requested that in the event that the court of common pleas did not find that the subrogation statute violated the Ohio Constitution, the

court would declare the amount owed to the appellant under the subrogation statute.

{¶ 5} The appellee filed a motion for summary judgment, seeking the Washington County Court of Common Pleas to declare R.C. 4123.93 and 4123.931 unconstitutional. The court issued a decision, finding that R.C. 4123.93 and 4123.931 violate Sections 2, 16, and 19, Article I of the Ohio Constitution for the reasons set forth in *Holeton*, 92 Ohio St.3d 115, 748 N.E.2d 1111.

## II. Assignments of Error

{¶ 6} "I. Ohio Revised Code Sections 4123.93 and 4123.931 as enacted by the 124th Ohio General Assembly in Substitute Senate Bill No. 227 do not violate Article I, Section 2 of the Ohio Constitution.

{¶ 7} "II. Ohio Revised Code Sections 4123.93 and 4123.931 as enacted by the 124th Ohio General Assembly in Substitute Senate Bill No. 227 do not violate Article I, Section 16 of the Ohio Constitution.

{¶ 8} "III. Ohio Revised Code Sections 4123.93 and 4123.931 as enacted by the 124th Ohio General Assembly in Substitute Senate Bill No. 227 do not violate Article I, Section 19 of the Ohio Constitution."

## III. Standard of Review

{¶ 9} Initially, we note that a party may challenge a statute as unconstitutional either on its face or as applied to a particular set of facts. *Belden v. Union Cent. Life Ins. Co.* (1944), 143 Ohio St. 329, 28 O.O. 295, 55 N.E.2d 629, paragraph four of the syllabus. If a statute is unconstitutional as applied, the state may continue to enforce the statute in circumstances where it is not unconstitutional, but if a statute is unconstitutional on its face, the state may not enforce the statute under any circumstances. *Women's Med. Professional Corp. v. Voinovich* (C.A.6, 1997), 130 F.3d 187, 193.

{¶ 10} Moreover, all legislative enactments enjoy a presumption of validity and constitutionality. *Adamsky v. Buckeye Local School Dist.* (1995), 73 Ohio St.3d 360, 361, 653 N.E.2d 212; *Sedar v. Knowlton Constr. Co.* (1990), 49 Ohio St.3d 193, 199, 551 N.E.2d 938. Unless it is shown beyond a reasonable doubt that a statute violates a constitutional provision, that statute will be presumed to be constitutional. *State ex rel. Herman v. Klopfleisch* (1995), 72 Ohio St.3d 581, 585, 651 N.E.2d 995, citing *Fabrey v. McDonald Police Dept.* (1994), 70 Ohio St.3d 351, 352, 639 N.E.2d 31.

{¶ 11} The appellee has challenged R.C. 4123.931 on its face. In so doing, he must establish that no set of circumstances exists under which the statute would be valid. The fact that a statute might operate unconstitutionally under

some conceivable set of circumstances is insufficient to render it wholly invalid. See *United States v. Salerno* (1987), 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697; *Emerson Elec. Co. v. Tracy* (2000), 90 Ohio St.3d 157, 162, 735 N.E.2d 445.

{¶ 12} When reviewing a trial court's summary judgment decision, an appellate court conducts a de novo review. See, e.g., *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Accordingly, an appellate court must independently review the record to determine whether summary judgment is appropriate. We need not defer to the trial court's decision. See *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153; *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 411–412, 599 N.E.2d 786. Thus, in determining whether a trial court properly granted a motion for summary judgment, an appellate court must review the standard for granting a motion for summary judgment as set forth in Civ.R. 56, as well as the applicable law. Civ.R. 56(C) provides:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶ 13} Thus, a trial court may not grant summary judgment unless the evidence demonstrates that (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429–430, 674 N.E.2d 1164.

## IV. Due Process and Uncompensated Takings

{¶ 14} For ease of analysis, we will first address the appellant's second and third assignments of error. The appellant contends that R.C. 4123.93 and 4123.931 do not violate Sections 16 and 19, Article I of the Ohio Constitution. Section 16, Article I provides:

All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.

{¶ 15} The focus of Section 16, Article I is the promise of due process rights. The appellee contends that R.C. 4123.93 and 4123.931 deny him the due process of law by assuming that there will be a double recovery in a settlement with a third party and by providing no vehicle for parties to litigate the amount of the recovery. Section 19, Article I concerns the inviolability of private property. It provides:

Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war or other public exigency, imperatively requiring its immediate seizure or for the purpose of making or repairing roads, which shall be open to the public, without charge, a compensation shall be made to the owner, in money, and in all other cases, where private property shall be taken for public use, a compensation therefore shall first be made in money, or first secured by a deposit of money; and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner.

{¶ 16} The appellee claims that the subrogation process set forth in R.C. 4123.93 and 4123.931 results in an uncompensated taking, in that it takes from claimants settlement money that they may never receive for future benefits.

{¶ 17} We now turn to the statutory sections at issue in the case sub judice. R.C. 4123.93 is merely a definitional section lending meaning to the terms used in R.C. 4123.931. R.C. 4123.931 provides: [1]

(A) The payment of compensation or benefits pursuant to this chapter or Chapter 4121., 4127., or 4131., of the Revised Code creates a right of recovery in favor of a statutory subrogee against a third party, and the statutory subrogee is subrogated to the rights of a claimant against that third party. The net amount recovered is subject to a statutory subrogee's right of recovery.

(B) If a claimant, statutory subrogee, and third party settle or attempt to settle a claimant's claim against a third party, the claimant shall receive an amount equal to the uncompensated damages divided by the sum of the subrogation interest plus the uncompensated damages, multiplied by the net amount recovered, and the statutory subrogee shall receive an amount equal to the subrogation interest divided by the sum of the subrogation interest plus the uncompensated damages, multiplied by the net amount recovered, except that the net amount recovered may instead be divided and paid on a more fair and

---

1. While we realize that R.C. 4123.931 is a lengthy statute, we include it here in its entirety, because most of its subsections are implicated in the challenge sub judice.

reasonable basis that is agreed to by the claimant and statutory subrogee. If while attempting to settle, the claimant and statutory subrogee cannot agree to the allocation of the net amount recovered, the claimant and statutory subrogee may file a request with the administrator of workers' compensation for a conference to be conducted by a designee appointed by the administrator, or the claimant and statutory subrogee may agree to utilize any other binding or non-binding alternative dispute resolution process.

The claimant and statutory subrogee shall pay equal shares of the fees and expenses of utilizing an alternative dispute resolution process, unless they agree to pay those fees and expenses in another manner. The administrator shall not assess any fees to a claimant or statutory subrogee for a conference conducted by the administrator's designee.

(C) If a claimant and statutory subrogee request that a conference be conducted by the administrator's designee pursuant to division (B) of this section, both of the following apply:

(1) The administrator's designee shall schedule a conference on or before sixty days after the date that the claimant and statutory subrogee filed a request for the conference.

(2) The determination made by the administrator's designee is not subject to Chapter 119. of the Revised Code.

(D) When a claimant's action against a third party proceeds to trial and damages are awarded, both of the following apply:

(1) The claimant shall receive an amount equal to the uncompensated damages divided by the sum of the subrogation interest plus the uncompensated damages, multiplied by the net amount recovered, and the statutory subrogee shall receive an amount equal to the subrogation interest divided by the sum of the subrogation interest plus the uncompensated damages, multiplied by the net amount recovered.

(2) The court in a nonjury action shall make findings of fact, and the jury in a jury action shall return a general verdict accompanied by answers to interrogatories that specify the following:

(a) The total amount of the compensatory damages;

(b) The portion of the compensatory damages specified pursuant to division (D)(2)(a) of this section that represents economic loss;

(c) The portion of the compensatory damages specified pursuant to division (D)(2)(a) of this section that represents noneconomic loss.

(E) (1) After a claimant and statutory subrogee ·know the net amount recovered, and after the means for dividing it has been determined under division (B) or (D) of this section, a claimant may establish an interest-bearing

trust account for the full amount of the subrogation interest that represents estimated future payments of compensation, medical benefits, rehabilitation costs, or death benefits, reduced to present value, from which the claimant shall make reimbursement payments to the statutory subrogee for the future payments of compensation, medical benefits, rehabilitation costs, or death benefits. If the workers' compensation claim associated with the subrogation interest is settled, or if the claimant dies, or if any other circumstance occurs that would preclude any future payments of compensation, medical benefits, rehabilitation costs, and death benefits by the statutory subrogee, any amount remaining in the trust account after final reimbursement is paid to the statutory subrogee for all payments made by the statutory subrogee before the ending of future payments shall be paid to the claimant or the claimant's estate.

(2) A claimant may use interest that accrues on the trust account to pay the expenses of establishing and maintaining the trust account, and all remaining interest shall be credited to the trust account.

(3) If a claimant establishes a trust account, the statutory subrogee shall provide payment notices to the claimant on or before the thirtieth day of June and the thirty-first day of December every year listing the total amount that the statutory subrogee has paid for compensation, medical benefits, rehabilitation costs, or death benefits during the half of the year preceding the notice. The claimant shall make reimbursement payments to the statutory subrogee from the trust account on or before the thirty-first day of July every year for a notice provided by the thirtieth day of June, and on or before the thirty-first day of January every year for a notice provided by the thirty-first day of December. The claimant's reimbursement payment shall be in an amount that equals the total amount listed on the notice the claimant receives from the statutory subrogee.

(F) If a claimant does not establish a trust account as described in division (E)(1) of this section, the claimant shall pay to the statutory subrogee, on or before thirty days after receipt of funds from the third party, the full amount of the subrogation interest that represents estimated future payments of compensation, medical benefits, rehabilitation costs, or death benefits.

(G) A claimant shall notify a statutory subrogee and the attorney general of the identity of all third parties against whom the claimant has or may have a right of recovery, except that when the statutory subrogee is a self-insuring employer, the claimant need not notify the attorney general. No settlement, compromise, judgment, award, or other recovery in any action or claim by a claimant shall be final unless the claimant provides the statutory subrogee and, when required, the attorney general, with prior notice and a reasonable

opportunity to assert its subrogation rights. If a statutory subrogee and, when required, the attorney general are not given that notice, or if a settlement or compromise excludes any amount paid by the statutory subrogee, the third party and the claimant shall be jointly and severally liable to pay the statutory subrogee the full amount of the subrogation interest.

(H) The right of subrogation under this chapter is automatic, regardless of whether a statutory subrogee is joined as a party in an action by a claimant against a third party. A statutory subrogee may assert its subrogation rights through correspondence with the claimant and the third party or their legal representatives. A statutory subrogee may institute and pursue legal proceedings against a third party either by itself or in conjunction with a claimant. If a statutory subrogee institutes legal proceedings against a third party, the statutory subrogee shall provide notice of that fact to the claimant. If the statutory subrogee joins the claimant as a necessary party, or if the claimant elects to participate in the proceedings as a party, the claimant may present the claimant's case first if the matter proceeds to trial. If a claimant disputes the validity or amount of an asserted subrogation interest, the claimant shall join the statutory subrogee as a necessary party to the action against the third party.

(I) The statutory subrogation right of recovery applies to, but is not limited to, all of the following:

(1) Amounts recoverable from a claimant's insurer in connection with under-insured or uninsured motorist coverage, notwithstanding any limitation contained in Chapter 3937. of the Revised Code;

(2) Amounts that a claimant would be entitled to recover from a political subdivision, notwithstanding any limitations contained in Chapter 2744. of the Revised Code;

(3) Amounts recoverable from an intentional tort action.

(J) If a claimant's claim against a third party is for wrongful death or the claim involves any minor beneficiaries, amounts allocated under this section are subject to the approval of probate court.

(K) The administrator shall deposit any money collected under this section into the public fund or the private fund of the state insurance fund, as appropriate. If a self-insuring employer collects money under this section of the Revised Code, the self-insuring employer shall deduct the amount collected, in the year collected, from the amount of paid compensation the self-insured employer is required to report under section 4123.35 of the Revised Code.

{¶ 18} We will jointly address the appellant's arguments that R.C. 4123.93 and 4123.931 do not offend due process or constitute an uncompensated taking under Sections 16 and 19, Article I of the Ohio Constitution, as did the *Holeton*

court when reviewing the predecessors to current R.C. 4123.93 and 4123.931. The *Holeton* court held that under Section 19, Article I, "any legislation must be reasonable, not arbitrary, and must confer upon the public a benefit commensurate with its burdens upon private property." *Holeton*, 92 Ohio St.3d at 121, 748 N.E.2d 1111, quoting *Direct Plumbing Supply Co. v. Dayton* (1941), 138 Ohio St. 540, 546, 21 O.O. 422, 38 N.E.2d 70. The *Holeton* court applied its earlier holdings regarding Section 16, Article I, as related to collateral-benefits-offset statutes, to R.C. 4123.93 and 4123.931, noting that the state has a legitimate interest in preventing double recoveries: "[I]t is constitutionally permissible for the state to prevent a tort victim from recovering twice for the same item of loss or type of damage, once from the collateral source and again from the tortfeasor." *Holeton*, 92 Ohio St.3d at 121–122, 748 N.E.2d 1111. The court noted, however, that statutes designed to prevent double recoveries "are not rationally related to their purpose where they operate to reduce a plaintiff's tort recovery irrespective of whether a double recovery has actually occurred." *Holeton*, 92 Ohio St.3d at 122, 748 N.E.2d 1111, citing *McMullen v. Ohio State Univ. Hosp.* (2000), 88 Ohio St.3d 332, 725 N.E.2d 1117; *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 715 N.E.2d 1062; *Buchman v. Wayne Trace Local School Dist. Bd. of Edn.* (1995), 73 Ohio St.3d 260, 652 N.E.2d 952; *Sorrell v. Thevenir* (1994), 69 Ohio St.3d 415, 633 N.E.2d 504. Taking these considerations into account, the court stated,

> [A claimant] has a constitutionally protected interest in his or her tort recovery to the extent that it does not duplicate the employer's or bureau's compensation outlay. Thus, if [former] R.C. 4123.931 operates to take more of the claimant's tort recovery than is duplicative of the statutory subrogee's workers' compensation expenditures, then it is at once unreasonable, oppressive upon the claimant, partial, and unrelated to its own purpose.

*Holeton*, 92 Ohio St.3d at 122, 748 N.E.2d 1111.

{¶ 19} Under this analysis, the *Holeton* court determined that former R.C. 4123.931(A), which gave the statutory subrogee a right of subrogation with respect to "estimated future values of compensation and medical benefits," and former R.C. 4123.931(D), which provided that "[t]he entire amount of any settlement or compromise of an action or claim is subject to the subrogation right of a statutory subrogee, regardless of the manner in which the settlement or compromise is characterized," violated Sections 16 and 19, Article I, of the Ohio Constitution. We find that the issues that rendered these provisions unconstitutional in *Holeton*, however, have been eliminated and/or reformed under the current versions of R.C. 4123.93 and 4123.931.

## A.  Future Benefits

{¶ 20}  Former R.C. 4123.931(A) required a claimant to disgorge the entire amount of the estimated value of future benefits to the statutory subrogee.  In some cases, the claimant never received the future benefits.  This situation resulted in a windfall for the statutory subrogee.  The current version of R.C. 4123.931, however, eliminates the possibility of such a windfall, because the claimant is no longer required to reimburse the statutory subrogee for future benefits that are not received.

{¶ 21}  The present version of R.C. 4123.931(E) allows a claimant to establish an interest-bearing trust account into which he or she may deposit the full amount of the subrogation interest that represents estimated future payments of compensation or benefits.  The claimant makes reimbursement payments from this trust account to the statutory subrogee for compensation, medical benefits, rehabilitation costs, or death benefits that the statutory subrogee has paid during the half of the year preceding the notice.  If the claimant establishes such a trust account, the statutory subrogee provides him or her with payment notices every six months, and the claimant reimburses the statutory subrogee the amount listed on the payment notice.  If the statutory subrogee's duty to continue making payments ends, any remainder in the trust account, after final reimbursement is made, is paid to the claimant or the claimant's estate.  If the claimant does not elect to establish a trust account under R.C. 4123.931(E)(1), R.C. 4123.931(F) provides that the claimant must pay the statutory subrogee the full amount of the subrogation interest that represents future payments.

{¶ 22}  The trust fund concept that is enacted in the present versions of R.C. 4123.931(E) and (F) is modeled after Minn.Stat. 176.061(6), which the *Holeton* court cited with approval.  *Holeton*, 92 Ohio St.3d at 124, 748 N.E.2d 1111.  Minn.Stat. 176.061 provides a formula under which the employer can obtain reimbursement for compensation paid, and it provides that remaining tort proceeds should be paid to the claimant and constitute a credit to the subrogee against future compensation payments.  Like the Minnesota statute, the current version of R.C. 4123.931 does not require the claimant to reimburse the statutory subrogee for future benefits that the claimant may never receive.  Additionally, under the present version of R.C. 4123.931, the claimant may keep proceeds remaining after the statutory subrogee's duty to continue making payments ends.  Therefore, we conclude that the current versions of the statutes at issue legitimately guard against a windfall for the statutory subrogee and simultaneously do away with the claimant's former burden regarding the risk of overestimating liability for future values.

## B. Distinguishing Settlements from Trials

{¶ 23} The *Holeton* court also determined that subsection (D) of former R.C. 4123.931 was unconstitutional because it distinguished between third-party claims that are tried and third-party claims that are settled. *Holeton,* 92 Ohio St.3d 115, 748 N.E.2d 1111. Under the former statute, if the claim was tried, the claimant could obtain a special jury interrogatory indicating that the award or judgment represented different types of damages. These interrogatories allowed the claimant to show that certain damages did not represent workers' compensation benefits; those damages, therefore, were not subject to subrogation. In the case of a settlement, however, the entire settlement amount was subject to subrogation, regardless of the manner in which the settlement was characterized. This practice prevented the claimant from showing that portions of the settlement did not represent workers' compensation benefits and, thus, were not subject to subrogation.

{¶ 24} Under the current version of R.C. 4123.931, however, sections (B) and (D) set forth a formula under which both the claimant's and statutory subrogee's interests in the damages owed by the third-party tortfeasor are determined. The formula applies to both settlements (R.C. 4123.931(B)) and awards following trial (R.C. 4123.931(D)). This equal application avoids the disparate result of the former statute and provides a clear definition of the claimant's and statutory subrogee's interests in the damages.

## C. Double Recovery

{¶ 25} The appellee contends that the present versions of R.C. 4123.93 and 4123.931 assume that there will be a double recovery in a settlement and provide no process by which parties can determine what is a fair award for all economic and noneconomic losses, as well as for past and future injuries. He argues that the formula employed by R.C. 4123.93 and 4123.931(B) and (D) to determine how a recovery by the claimant against a third-party tortfeasor will be distributed deprives the claimant of the opportunity to show that there was no double recovery. The appellee overlooks, however, the procedures outlined in R.C. 4123.931 to determine the respective amounts to be recovered by the claimant and the subrogee in the event that the claimant objects to the recovery calculation rendered by the formula.

{¶ 26} R.C. 4123.931 provides several methods for determining how a recovery by the worker's compensation claimant against a third-party tortfeasor is to be distributed. First, the claimant has the option of joining the bureau or a self-insured employer as a party to the underlying tort action. Once the subrogee is a party, if the parties are unable to agree on a settlement amount under R.C. 4123.931(B), the matter may proceed to trial, where all issues can be heard. The

statutory subrogee presents evidence at trial regarding its expenditures on behalf of the claimant and other evidence regarding its entitlement for future damages. The subrogation amount can be determined as part of the damages proven through use of jury interrogatories submitted by the court pursuant to Civ.R. 49(B).

{¶ 27} Second, if the claimant does not join the bureau or a self-insured employer as a party to the underlying tort action, and has settled with the tortfeasor without the participation of the bureau or the self-insured employer, the bureau and the claimant may choose to use the aforementioned formula or some other mutually agreed-to allocation, or may seek a declaratory judgment to determine the respective amounts to be recovered by the claimant and the subrogee. If the case proceeds to trial, the claimant may present evidence as to what portions of the amount recovered represent a double recovery. Both of these options ensure that the claimant will obtain a full and fair hearing.

{¶ 28} Third, the parties may lawfully settle at any time. R.C. 4123.931(B) provides the parties with the option to use the formula or any other agreed-upon allocation of the net amount recovered. The parties are free to agree to any allocation they deem proper. If the parties cannot agree, the issue can be resolved at trial. This option also provides a claimant with the opportunity for a full, fair hearing. Therefore, each of the procedures set forth in R.C. 4123.931 provides a claimant with due process when determining how a recovery by the workers' compensation claimant against a third-party tortfeasor is to be distributed.

{¶ 29} We take the opportunity to note that the constitutionality of R.C. 4123.93 and 4123.931 was recently upheld by the Lucas County Court of Common Pleas in *Fry v. Surf City, Inc.*, 137 Ohio Misc.2d 6, 2006-Ohio-3092, 851 N.E.2d 573. In *Fry*, the appellant challenged the statutes under Sections 2, 16, and 19, Article I of the Ohio Constitution, the same challenge that the appellee in the case sub judice undertakes. In a well-reasoned decision, the Lucas County Court of Common Pleas held that R.C. 4123.93 and 4123.931 violated neither the Due Process or Takings clause, under Article I, Sections 16 and 19, nor the Equal Protection Clause under Section 2, Article I of the Ohio Constitution.

{¶ 30} Further, we note that the manifest objective of the General Assembly in enacting the current versions of R.C. 4123.93 and 4123.931 was to comply with the Supreme Court of Ohio's holding in *Holeton*, 92 Ohio St.3d 115, 748 N.E.2d 1111. See *State ex rel. United Auto., Aerospace & Agricultural Implement Workers of Am. v. Bur. of Workers' Comp.*, 108 Ohio St.3d 432, 2006-Ohio-1327, 844 N.E.2d 335, at ¶ 17, citing Legislative Service Commission, Bill Analysis of 2002 S.B. 227. Because the current versions of R.C. 4123.93 and 4123.931 avoid the constitutional pitfalls of the former statutes with regard to due process and

takings under Sections 16 and 19, Article I of the Ohio Constitution, and because the statutes were specifically drafted by the General Assembly to comply with *Holeton*, we conclude that the statutes are constitutional. Therefore, the appellant's second and third assignments of error are well taken.

## V. Equal Protection

{¶ 31} In its first assignment of error, the appellant argues that R.C. 4123.93 and 4123.931 do not violate Section 2, Article I of the Ohio Constitution. Section 2 provides:

> All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the general assembly.

{¶ 32} Section 2, Article I is generally referred to as Ohio's Equal Protection Clause. The equal protection analysis given by Ohio courts under the Ohio Constitution and the United States Constitution is "functionally equivalent." *Desenco, Inc. v. Akron* (1999), 84 Ohio St.3d 535, 544, 706 N.E.2d 323.

{¶ 33} Ohio courts have consistently used the rational-basis test when addressing constitutional challenges to workers' compensation statutes. See, generally, *State ex rel. Doersam v. Indus. Comm.* (1989), 45 Ohio St.3d 115, 543 N.E.2d 1169; *Rose v. Mayfield* (1984), 20 Ohio App.3d 300, 302, 20 OBR 392, 486 N.E.2d 197; *Holeton*, 92 Ohio St.3d 115, 748 N.E.2d 1111. Under the rational-basis test, a challenged statute must be upheld if there exists any conceivable set of facts under which the classification rationally furthers a legitimate legislative objective. *Schwan v. Riverside Methodist Hosp.* (1983), 6 Ohio St.3d 300, 301, 6 OBR 361, 452 N.E.2d 1337; *Heller v. Doe* (1993), 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257. Further, a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data. *FCC v. Beach Communications, Inc.* (1993), 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211. The state is under no obligation to produce evidence to sustain the rationality of a statutory classification, and the party challenging the constitutionality of the enactment has the burden to "negative every conceivable basis which might support it." *Heller*, 509 U.S. at 320, 113 S.Ct. 2637, 125 L.Ed.2d 257.

{¶ 34} In *Holeton*, the Supreme Court of Ohio held that the state's concern for minimizing losses to the workers' compensation fund and self-insuring employers caused by the acts of third-party tortfeasors is a legitimate concern to the extent that it prevents a double recovery. *Holeton*, 92 Ohio St.3d at 121–122, 748 N.E.2d 1111. As discussed previously, under the current version of R.C.

4123.931, the statutory subrogee recoups only to the extent that there is a double recovery. The claimant is provided with a substantial opportunity and may choose the means by which he or she may prove amounts that do not represent a double recovery.

{¶ 35} The appellee argues that R.C. 4123.931 creates an arbitrary classification, distinguishing between claimants who settle their third-party tort claims and those who try their claims. As discussed previously, the *Holeton* court determined that the prior version of R.C. 4123.931 violated Section 2, Article I of the Ohio Constitution because claimants who settled their third-party tort claims were precluded from showing that their tort recovery did not duplicate workers' compensation benefits, whereas claimants who tried their tort claims were able to demonstrate that fact via special jury interrogatories. Claimants who went to trial were able to have some portion of their award shielded from the statutory subrogee's right of reimbursement, but claimants who settled had no such method available to them. The statute operated regardless of whether there had actually been a double recovery.

{¶ 36} The current version of R.C. 4123.931 eliminates this distinction. The pro rata formula employed by R.C. 4123.931 in the case of settlements and trial ensures that the statutory subrogee does not recoup more from the claimant than the amount representing a double recovery. Moreover, the statute provides alternative means for determining the amount representing a double recovery if the claimant does not want to use the statutory formula. R.C. 4123.931(B) provides that the net amount recovered may be divided and paid "on a more fair and reasonable basis that is agreed to by the claimant and statutory subrogee," rather than determined by the statutory formula. · R.C. 4123.931(B) also provides that nonbinding alternative dispute resolution may be used to determine the net amount recovered. Additionally, if the parties cannot resolve the recovery issue through any of the aforementioned means, the claimant may bring a declaratory-judgment action and may present evidence regarding what portions of the amount recovered constitute a double recovery. Due process is ensured under each of the means for determining the net amount recovered under R.C. 4123.931, as discussed previously.

{¶ 37} R.C. 4123.931 establishes a rational method under which a claimant can demonstrate whether there was a double recovery. Whereas jury interrogatories may be used to establish a double recovery if a case goes to trial, there are several other methods available under R.C. 4123.931 for the claimant to establish a double recovery in a settlement situation. Because we find that the current version of R.C. 4123.931 is a rational response to a legitimate state concern, the appellant's first assignment of error is sustained.

## VI. Vagueness

{¶ 38} In his brief, the appellee also raises the argument that R.C. 4123.931 is unconstitutionally vague. This was the first time the appellee raised the void-for-vagueness doctrine in support of his position. It is a cardinal rule of appellate review, however, that a party cannot assert new legal theories for the first time on appeal. *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43, 70 O.O.2d 123, 322 N.E.2d 629. Thus, a reviewing court will not consider an issue that a party failed to raise initially in the trial court. See *Lippy v. Society Natl. Bank* (1993), 88 Ohio App.3d 33, 40, 623 N.E.2d 108. Applying this rule to the appellee's argument, we find that the appellee effectively waived the void-for-vagueness argument when he failed to assert it at the trial-court level. We are now, therefore, precluded from addressing it.

## VII. Conclusion

{¶ 39} In our view, neither R.C. 4123.93 nor 4123.931 violates the Due Process Clause, the Takings Clause, or the Equal Protection Clause as set forth in Sections 16, 19, and 2, Article I of the Ohio Constitution. Accordingly, we reverse the judgment of the trial court and remand the cause for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

ABELE, J., concurs in judgment only.

HARSHA, P.J., dissents.

HARSHA, Presiding Judge, dissenting.

{¶ 40} Because the statutory scheme for subrogation places the burden of proof on the issue of estimated future payments upon the claimant, I dissent.