OPINION
{¶ 1} Plaintiff-Appellant Rita M. Lydic was injured when she struck Defendant-Appellee Marianne Earnest's automobile on Rt. 224 in Boardman. Appellee attempted to make a left turn onto Rt. 224, and needed to cross two lanes of eastbound traffic and the center turning lane in order to complete her left-hand turn. Appellant was traveling eastbound on Rt. 224, and struck Appellee's vehicle before Appellee could complete the left turn. A jury found Appellant 49% negligent and found that the damages amounted to $1,300, awarding Appellant $633. Appellant contends that the manifest weight of the evidence is against the finding that she was 49% negligent and against the finding that the damages were only $1,300. Appellant is correct that the finding of 49% comparative negligence is in error. The amount of damages is not against the manifest weight of the evidence. The trial court judgment is reversed only with respect to the finding of comparative negligence, and Appellant is hereby awarded the entire $1,300 award.
 FACTS AND PROCEDURAL HISTORY {¶ 2} The accident occurred on August 28, 1998, at approximately 5:00 p.m. on a Friday afternoon. Appellee had stopped at the stop sign at the corner of Sugar Tree Drive and Rt. 224 in Boardman, Ohio. She was headed north, and was attempting to make a left-hand turn across the eastbound traffic so that she could proceed westward on Rt. 224. The two roads paralleling Sugar Tree Drive on the left and right have traffic signals at the intersection with Rt. 224, but Sugar Tree Drive only has a stop sign. (Tr., p. 13.) Rt. 224 is a heavily traveled five-lane road, particularly so at 5:00 p.m. on a Friday. (Tr., p. 15.) Both parties were driving passenger automobiles at the time of the accident.
 {¶ 3} Appellant was driving in the eastbound left-hand lane when she struck Appellee's vehicle. Appellee was straddling the center turning lane and Appellant's lane when the impact occurred. Appellant hit Appellee's car just behind the driver's side door.
 {¶ 4} On January 26, 2000, Appellant filed a personal injury complaint in the Mahoning County Court of Common Pleas. She claimed that Appellee negligently failed to yield the right of way when she entered Rt. 224 from Sugar Tree Drive. Appellant's husband, Wayne Lydic, also filed a loss of consortium claim.
 {¶ 5} The case went to trial on June 10, 2002. Significantly, Ohio State Trooper David Hunt, who investigated the accident, testified that there were no skid marks from either vehicle, and that there was no reaction time available to either driver to allow either of them to avoid the collision. (Tr., p. 28.) He noted that the weather was dry and sunny, and that the roadway was straight and level. (Tr., p. 30.) No ambulance was called to the accident scene. (Tr., p. 40.) Trooper Hunt determined that Appellee was at fault and cited her for failure to yield at the stop sign. (Tr., pp. 30-31.)
 {¶ 6} Appellant testified that she did not see Appellee's car enter Rt. 224 because she was looking straight ahead and not looking side to side. (Tr., pp. 317-318.)
 {¶ 7} Appellant drove herself to Beeghly Medical Center for treatment. (Tr., p. 244.) The hospital took x-rays and gave Appellant a cervical collar to wear. On September 1, 1998, Appellant saw her family physician, Dr. James Paris, D.O. She complained of pain in her neck, left shoulder, back, right leg, right foot, cramping in both legs, and a headache. (Tr., pp. 60-61.) Dr. Paris testified through videotaped deposition that Appellant had a previous neck injury approximately ten years before the auto accident. (Tr., p. 61.) He also found evidence of cervical lumbar degenerative disk disease. (Tr., p. 63.) Dr. Paris had been regularly treating Appellant for back and neck problems. (Tr., pp. 82-83.) Appellant also had back surgery in 1989 and 1992. (Tr., p. 84.) Nevertheless, Dr. Paris concluded that the August 28, 1998, automobile accident caused Appellant's injuries. (Tr., p. 64.)
 {¶ 8} Dr. Paris began treating Appellant by using hot packs, ultrasound, muscle stimulation and steroid injections. (Tr., pp. 64-65.) Appellant received this treatment every three to five days from September 1998 until August 1999. (Plaintiff's Exh. 12.) Starting on December 15, 1998, the doctor added an exercise regimen to the other treatment.
 {¶ 9} On November 14, 1998, Appellant hit a deer while driving on Ohio Rt. 11. (Tr., pp. 70, 87, 323.) Appellant testified that the deer accident aggravated her injuries. (Tr., p. 326.)
 {¶ 10} Appellant testified that she was involved in an automobile accident in 1988 in which she was hit from behind. (Tr., p. 237.) She suffered shoulder and lower back injuries in that accident. (Tr., p. 304.) Her history also revealed two back surgeries, which were at least partially related to that accident. Appellant was receiving Social Security disability payments due to her back problems. (Tr., p. 308.)
 {¶ 11} Appellee hired Dr. Robert Corn, an independent medical examiner, to give an opinion as to Appellant's medical condition. He determined that Appellant had degenerative spondylsos, which he explained was a combination of arthritis and cervical disk disease, both in the neck and in the lower back region. (Tr., p. 125.) He testified that Appellant had a variety of preexisting medical conditions on the date of the accident, including arthritis, two spinal surgeries, blood abnormalities, and blood clots in her leg and lungs. (Tr., p. 125.) Dr. Corn testified that after the automobile accident, but prior to the deer accident, the only medical treatment Appellant received was at the emergency room, including some x-ray work, and at Dr. Paris's office. (Tr., p. 132.) After the deer accident, she had more complicated work done, more x-rays, MRI tests, and she visited her spinal specialist. (Tr., p. 132.) Appellant's condition became significantly worse after the deer accident. (Tr., p. 134.) The deer accident necessitated a variety of additional tests and treatment. (Tr., p. 135.)
 {¶ 12} Appellee testified that she knew that Rt. 224 was a dangerous road, but that she would never consider using one of the streets with traffic lights to enter Rt. 224, rather than using Sugar Tree Road, which only has a stop sign. (Tr., pp. 195-197.) Immediately prior to the accident, she had been sitting at the stop sign at Sugar Tree Road for a few minutes waiting for a chance to make a left turn. (Tr., p. 193.) She saw two cars in the right eastbound lane, but she thought that the eastbound passing lane was clear. (Tr., p. 206.) She thought that both westbound lanes and the central turning lane were also clear. (Tr., p. 206.) She believed that Appellant's car was in the right-hand curb lane and not in the passing lane at the moment she began making her left turn across Rt. 224. (Tr., p. 296.) She thought that Appellant's car was behind another car in the eastbound right-hand lane. (Tr., p. 206.) Appellee believed that Appellant must have moved into the turning lane and accelerated soon after Appellee began crossing Rt. 224. (Tr., p. 206.) Appellee admitted that she did not see this happen, though. (Tr., p. 207.) Appellee did not see Appellant's vehicle again until the moment of impact. (Tr., p. 210.)
 {¶ 13} The jury rendered its verdict on June 14, 2002. They returned a four-page multi-part interrogatory, in which they found that Appellee and Appellant were both negligent and that both parties proximately caused the accident; that Appellant was 49% negligent; that Appellee was 51% negligent; and that the total amount of damages was $1300. The jury also returned a general verdict in favor of Appellant Rita Lydic for $1300 and general verdict for Wayne Lydic with no damages.
 {¶ 14} The trial court entered the jury's verdict as its judgment on June 14, 2002, and this timely appeal followed.
 ASSIGNMENTS OF ERROR {¶ 15} Appellant's first assignment of error is that:
 {¶ 16} "The trial court erred and abused its discretion by entering judgment against the manifest weight of the evidence."
 {¶ 17} There are two parts to this assignment of error. First, Appellant contends that there was no evidence that she was comparatively negligent in causing the accident. Second, Appellant argues that there is no evidence to support the low dollar amount of the verdict.
 {¶ 18} With regard to the first issue, Appellant contends that she had the right of way on Rt. 224 and that Appellee was required to yield to that right of way because Appellee was at a stop sign. Although Appellee relied on the theory that Appellant changed lanes just prior to the accident, Appellant asserts that this fact is not relevant to the issue of her alleged comparative negligence. Appellant believes that she was permitted to use the passing lane as part her right of way. She contends that mere use of the passing lane cannot be negligence when she had the right of way. Appellant testified that she was in the passing lane the entire time prior to the accident. There is no evidence to suggest that Appellant saw the accident coming or had any time to react to it. According to Appellant, the facts that Appellee relied on at trial to show comparative negligence, even if true, do not prove Appellant's negligence.
 {¶ 19} Although Appellant's argument is somewhat sketchy, it is, in essence, correct.
 {¶ 20} The standard of review for appeals in civil cases challenging manifest weight or the sufficiency of the evidence is that: "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 376 N.E.2d 578. The weight to be given the evidence and determinations regarding credibility of witnesses are primarily for the trier of fact. SeasonsCoal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 10 OBR 408,461 N.E.2d 1273. Matters of law are reviewed de novo by this Court. OhioBell Tel. Co. v. Pub. Util. Comm. (1992), 64 Ohio St.3d 145, 147,593 N.E.2d 286.
 {¶ 21} There is no question that Appellee was stopped at a stop sign immediately before the accident occurred, and was legally required to yield the right of way to the motorists traveling on Rt. 224. R.C. §4511.43 states:
 {¶ 22} "(A) Except when directed to proceed by a law enforcement officer, every driver of a vehicle or trackless trolley approaching astop sign shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it. After having stopped, the driver shall yield theright-of-way to any vehicle in the intersection or approaching on anotherroadway so closely as to constitute an immediate hazard during the time the driver is moving across or within the intersection or junction of roadways." (Emphasis added.)
 {¶ 23} R.C. § 4511.01(UU) defines "right-of-way" as:
 {¶ 24} "(1) The right of a vehicle, streetcar, trackless trolley, or pedestrian to proceed uninterruptedly in a lawful manner in the direction in which it or the individual is moving in preference to another vehicle, streetcar, trackless trolley, or pedestrian approaching from a different direction into its or the individual's path;"
 {¶ 25} The absolute right of drivers to travel freely within their statutorily defined right of way was firmly established in the case ofMorris v. Bloomgren (1933), 127 Ohio St. 147, 187 N.E. 2. AlthoughMorris did not deal specifically with a stop sign violation, its rule has been applied in all cases when a driver fails to yield a statutory right of way:
 {¶ 26} "1. Sections 6310-28 and 6310-28a, General Code, are cognate sections, pertaining to the right of way at highway intersections, and should be together construed. One section requires the operator of a vehicle to yield the right of way at highway intersections to a vehicle approaching from the right, and the other defines `right of way' as the right `to proceed uninterruptedly in a lawful manner in the direction in which it is moving' in preference to another vehicle approaching into its path from a different direction. Construed together these sections conferan absolute right of way upon the vehicle approaching from the right,
qualified only by the requirement that, in proceeding uninterruptedly, it must proceed in a lawful manner.
 {¶ 27} "2. The expressions and implications contained in the cases ofHeidle v. Baldwin, 118 Ohio St. 375, 161 N.E. 44, 58 A.L.R. 1186, andGeo. Ast Candy Co. v. Kling, 121 Ohio St. 362, 169 N.E. 292, by denying the vehicle approaching from the right its statutory privilege of proceeding uninterruptedly if it proceeds in a lawful manner, and by placing the drivers of both vehicles upon an equal plane in approaching an intersection and relegating both to the rules of care existing at common law, entirely ignore the preferential status of the vehicle approachingfrom the right and the servient status of the other vehicle. (Heidle v.Baldwin, 118 Ohio St. 375, 161 N.E. 44, 58 A.L.R. 1186, and Geo. AstCandy Co. v. Kling, 121 Ohio St. 362, 169 N.E. 292, are disapproved and overruled.)" (Emphasis altered.) Id. at syllabus.
 {¶ 28} Morris established an absolute preference of the rights of the driver with the statutory right of way over drivers that are subject to a statutory duty to yield, as long as the motorist with the right of way is driving lawfully. Furthermore, the driver with the right of way has a right to assume that other drivers approaching the right of way will yield to the drivers with the right of way. Id. at paragraph five of the syllabus. These rules were reaffirmed in Timmons v. Russomano (1968),14 Ohio St.2d 124, 43 O.O.2d 186, 236 N.E.2d 665, which held at paragraph one of the syllabus:
 {¶ 29} "Under Ohio law, the driver of a motor vehicle proceeding over a through street in a lawful manner has the absolute right of way over a vehicle on an intersecting stop street, and the driver on the through street may ordinarily assume that such right of way will be respected and observed by the driver of the vehicle on the intersecting stop street."
 {¶ 30} These principles were reaffirmed again in Deming v. Osinski
(1970), 24 Ohio St.2d 179, 265 N.E.2d 554, which held that it was reversible error to give a jury instruction on contributory negligence in cases where there was no evidence that the driver with the right of way was driving unlawfully at the time of the accident. Id. at 182. Deming
also held that the driver with the right of way has no duty to look for danger that might be approaching the right of way. Id. at 181.
 {¶ 31} Numerous courts have reapplied the principles in Morris andDeming and have not allowed the contributory or comparative negligence of the driver with the right of way to become an issue at trial without evidence that the driver with the right of way was also driving unlawfully. For example, the Ninth District Court of Appeals held the following:
 {¶ 32} "[W]hether or not the driver exercised his common-law duty of ordinary care is not a consideration in determining whether the vehicle was proceeding in a lawful manner. Only after it has been found that the vehicle is not proceeding in a lawful manner, by violating a law or ordinance, does the consideration of the driver's common-law duty to use ordinary care come into play." Holding v. Chappel (1987),41 Ohio App.3d 250, 252, 535 N.E.2d 350.
 {¶ 33} Other examples may be found in: Roehm v. Cramer, (Dec. 31, 1998), 1st Dist. No. C-980009; Ramos v. Kalfas, (May 19, 1994), 8th Dist. No. 64806; Mid-American Nat. Bank and Trust Co. v. Chrysler Corp.,
(Aug. 19, 1994), 6th Dist. No. 94WD007.
 {¶ 34} The one caveat in all these cases is that the driver with the right of way must use ordinary care not to injure another driver who has blocked the right of way and has created a perilous condition. Deming at paragraph five of the syllabus. This duty only arises after the other driver has failed to yield and after the driver with the right of way has realized that there is a clearly dangerous condition in the right of way. See discussion in Mid-American Nat. Bank and Trust Co., supra, 6th Dist. No. 94WD007. The previously cited cases make it clear that the driver with the right of way is not required to anticipate that this situation might occur, and may proceed along the right of way under the assumption that the right of way will be respected. Timmons,14 Ohio St.2d at 127, 43 O.O.2d 186, 236 N.E.2d 665; Deming,24 Ohio St.2d at 181, 265 N.E.2d 554.
 {¶ 35} In the instant case, Appellee's evidence of Appellant's comparative negligence consists of these facts: Appellant may have moved from the right eastbound lane to the left eastbound lane; Appellant may have accelerated in the left lane; and Appellant did not look to see that Appellee was waiting at the stop sign to enter Rt. 224. Even if all of these facts are true, there is no proof that Appellant was doing anything unlawful while driving along her right of way. Appellant was permitted to use the left lane, and one would normally expect that a person who moves into the faster left lane would accelerate. Appellant had a right to expect that anyone entering Rt. 224 from a side street would respect her right to use the left lane even if no one else was in that lane. And because Appellant had the right of way, she was under no duty to anticipate that Appellee would fail to yield to that right of way.
 {¶ 36} Appellee did not attempt to prove that Appellant was driving unlawfully on Rt. 224. She only tried to prove that Appellant breached a duty of care. In contrast, the caselaw cited earlier establishes that Appellant owed no duty of care to Appellee as long as Appellant was proceeding lawfully. Although it is possible Appellant would owe Appellee a duty of care if and when she became aware of the impending collision, neither party attempted to prove that the accident could have been avoided at or near the moment of impact. The evidence of record reflects that neither party realized the collision was going to occur until it happened. Based on the aforementioned legal principles and the evidence at trial, Appellant could not have been comparatively negligent in this case. The finding that Appellant was 49% negligent must be reversed because there is no evidence of comparative negligence.
 {¶ 37} Concerning the weight of the evidence as to the dollar amount of damages, Appellant's arguments are without merit. In order to set aside jury damages as inadequate and against the manifest weight of the evidence, a reviewing court must determine that the jury verdict, "is so disproportionate as to shock reasonable sensibilities and indicates that the jury lost its way in assessing compensatory damages." Bailey v.Allberry (1993), 88 Ohio App.3d 432, 437, 624 N.E.2d 279.
 {¶ 38} Although there is some evidence that could have justified a larger award than $1300, there was also substantial evidence of intervening causes that could have contributed to Appellant's injuries, pain, suffering, and medical bills. The most significant intervening cause was that Appellant hit a deer on November 14, 1998. There is evidence on the record that Appellant's condition was improving up to that date, and that her condition significantly worsened after the deer accident.
 {¶ 39} Appellant presented an itemized bill from Midlothian Medical, listing $8,360.60 in charges. These charges began on September 1, 1998, and include the costs of hot packs, muscle stimulation, ultrasound, exercises, x-rays, and an initial examination. The charges end on August 9, 1999. The jury may have concluded that many or all of the charges after November 14, 1998, were due to the deer accident and not to the August 28, 1998, automobile accident.
 {¶ 40} There was also ample evidence of a number of preexisting conditions that may have necessitated Appellant's medical treatment. Appellant was involved in an auto accident in 1988, which caused neck and back injuries. Appellant had back surgeries in 1989 and 1992, which are related to Appellant's disability. Furthermore, Appellant had degenerative cervical disk disease and arthritis in her back. She was seeing physicians for these problems for many years. The jury may not have believed Appellant's testimony that her medical problems and associated pain resulted solely from the August 28, 1998 accident. The jury may have attributed some of the medical costs to Appellant's preexisting conditions. The evidence would support an award of no monetary damages or an award of much more than $1300. Thus, the amount that the jury awarded is certainly consistent with the evidence presented at trial.
 {¶ 41} Appellant's second assignment of error asserts:
 {¶ 42} "The trial court erred in instructing the jury that a person is negligent if he or she looks but does not see that which would have been seen by reasonably cautious and careful person, in the absence of evidence that the plaintiff was in any way negligent."
 {¶ 43} Our decision with respect to Appellant's first assignment of error renders as moot the issue raised in this second assignment of error.
 {¶ 44} The judgment of the trial court is reversed with respect to the finding that Appellant Rita M. Lydic was 49% negligent. The judgment is affirmed with respect to the finding by the jury that there were $1,300.00 in damages. Judgment is rendered for Appellants in the amount of One Thousand Three Hundred and 00/100 Dollars ($1,300.00). All other aspects of the June 14, 2002, judgment are affirmed.
Vukovich, J., concurs.
DeGenaro, J., concurs.