[Cite as *Anderson v. Schmidt*, 2013-Ohio-3524.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99084**

# DALE ANDERSON, ET AL.

PLAINTIFFS-APPELLANTS

vs.

# ROBERT E. SCHMIDT, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-759640

**BEFORE:** Kilbane, J., Boyle, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED**: August 15, 2013

**ATTORNEYS FOR APPELLANTS**

Matthew A. Palnik
Donald G. Riemer
Shapiro, Marnecheck, Riemer & Palnik
425 Western Reserve Building
1468 West Ninth Street
Cleveland, Ohio 44113

**ATTORNEY FOR APPELLEES**

Jan L. Roller
Davis & Young
1200 Fifth Third Center
600 Superior Avenue
Cleveland, Ohio 44114

MARY EILEEN KILBANE, J.:

{¶1} Plaintiffs-appellants, Dale Anderson ("Dale"), Julius Anderson ("Julius"), and Viola Anderson ("Viola") (collectively known as "plaintiffs"), the children of Priscilla Anderson ("the decedent"), appeal from the final judgment in an action for wrongful death filed against defendants-appellees, Robert Schmidt ("Schmidt") and Rich's Towing (collectively known as "defendants"). We find that the trial court committed prejudicial error in connection with the charge to the jury; therefore, we reverse and remand for further proceedings in accordance with this opinion.

{¶2} On April 9, 2010, the decedent was struck by a tow truck, operated by Schmidt of Rich's Towing, as she was attempting to cross Bagley Road at the Front Street intersection in Berea. She suffered a fractured pelvis and subsequently contracted pneumonia and died on May 26, 2010. Dale was appointed administrator of her estate. In his representative capacity and individual capacity he, together with his siblings in their individual capacities, filed a wrongful death action against defendants on July 14, 2011.

{¶3} The matter proceeded to a jury trial on August 6, 2012. Plaintiff presented the videotaped testimony of Berea Police Officer Rob Chernisky ("Chernisky") and the testimony of Steve McKenna ("McKenna"), Choya Hawn ("Hawn"), Dale, and Julius.

{¶4} Chernisky testified that on April 9, 2010, at approximately 1:15 p.m., the decedent was at the northwest corner of the intersection of Front Street and Bagley Road, and was waiting to cross Bagley Road toward the southwest corner of the intersection.

Schmidt was driving a 1998 Peterbilt tow truck and was in the southbound lane of Front Street, waiting to turn right onto the westbound lane of Bagley Road. According to Chernisky, as the light for Front Street turned green or at the indication of the walk signal, a pedestrian in the crosswalk would have the right-of-way and vehicles would have to yield.

{¶5} By the time Chernisky arrived, he observed the decedent lying on Bagley Road, partially beneath the tow truck, just in front of the right tire. Chernisky did not speak with the decedent, and she was transported to the hospital. Schmidt told Chernisky that he did not see the decedent, and after speaking with Schmidt and witnesses Annette Washington ("Washington") and McKenna, Chernisky determined that when the light on Front Street turned green, Schmidt began to make a wide right turn onto Bagley and then struck the decedent. Photographs depict the decedent partially beneath the tow truck. Her feet were approximately 14 feet away from the curb and her head was beneath the tow truck. There were skid marks immediately to the east of the decedent, near the crosswalk traversing Bagley Road.

{¶6} On cross-examination, Chernisky testified that according to a pamphlet prepared by the Ohio Department of Public Safety, pedestrians should look both ways before crossing and should continue to check for traffic as they proceed. The defense also asked him to assume that a clean portion of the truck near the passenger door may have been the point where the decedent and the tow truck made contact, and in light of

that assumption, then the decedent walked from the curb and into the side of the truck as it was turning.

{¶7} McKenna testified that he was in a vehicle driven by his coworker, Dave Disinger ("Disinger"). They were stopped in the northbound direction of Front Street at the Bagley Road intersection, and McKenna observed the decedent standing near a pole at the northwest corner of the street, near the ramp of the crosswalk. After the light for Front Street traffic turned green, McKenna noticed the decedent crossing inside the crosswalk and observed the tow truck making a right turn. According to McKenna, the decedent "wasn't looking around" to see the tow truck coming at her, nor did the decedent or the tow truck yield to the other. McKenna was certain that he observed the decedent inside the crosswalk. He next noticed that she was down and her feet were visible from under the tow truck, several steps away from the curb. McKenna told Disinger, "That truck just ran over that old lady, and he had no clue." McKenna stated on cross-examination that the decedent did not look to her left to see the tow truck as it approached. He also stated that she was still standing when the front of the tow truck passed her.

{¶8} Hawn, of Introtech, Inc., an accident reconstruction company, testified that he is a former Ohio State Trooper and has training and experience in accident investigation and reconstruction. Hawn examined police photographs, medical records, skid marks, made various measurements of the truck, and read Schmidt's deposition, McKenna's deposition, and Washington's deposition. Hawn determined that the

accident occurred after the decedent had been walking for 3.4 seconds when the decedent was 14 feet from the curb. At that point, Schmidt was 7 seconds into his turn and traveled approximately 35 feet and was traveling 6 or 7 miles per hour. Hawn stated that the typical reaction time between seeing a danger and responding to it is 1.5 seconds. He determined that 1.5 seconds before the collision, the truck would have been immediately to the decedent's left and slightly behind her, and even if she had stopped, the side of the truck would have still hit her. Hawn stated that the truck has limited visibility spots in the front on the right of the vehicle. In Hawn's opinion, the collision occurred because Schmidt failed to yield the right- of-way to the decedent. Hawn acknowledged on cross-examination that the decedent was not struck by the front of the vehicle but was hit from the side.

{¶9} Dale Anderson testified that his mother was hospitalized for eight days after the accident. She had a fractured pelvis and multiple contusions, and she was subsequently transferred to a rehabilitation facility to address her mobility issues. She remained there for about a month and had begun to use a walker. She then contracted pneumonia and was transported to Lakewood hospital where she died. She incurred medical bills totaling $173,615.32. Julius testified that he frequently stayed with his mother.

{¶10} The defense presented testimony from Washington, Schmidt, and Richard Stevens of Valley Technical Services, an accident reconstructionist. Washington, a bus driver for the Cuyahoga County Board of Mental Retardation and Development

Disabilities ("MRDD"), testified that she was driving a school bus heading eastbound on Bagley Road. Washington observed the decedent on the red brick or pedestrian pad of the ramp leading to the crosswalk. The tow truck was already moving, making a right-hand turn. The tow truck made its turn and, as it did so, Washington observed the decedent step into the crosswalk. According to this witness, the decedent stepped off the pad near the crosswalk as the tow truck was already turning. Following the collision, Washington ran over to Schmidt and said, "You wouldn't have seen her."

{¶11} Schmidt testified that he was stopped in the far right lane of the southbound direction of Front Street and intended to turn right or westward onto Bagley Road. Because of the size of his vehicle, and his intention to make a left turn immediately after turning onto Bagley, when the light turned green, he headed toward the left lane of Bagley Road rather than the rightmost lane. Schmidt stated that he looked but did not did not see anyone in the adjacent crosswalk or pedestrian area, but as he was into his turn, he heard a thud. He got out of his truck and saw the decedent's legs near the passenger side of the truck. The decedent reportedly asked, "Didn't you see me?" and he told her that he did not.

{¶12} Stevens testified that he is a former Ohio State Trooper who has experience and training in crash investigation and accident reconstruction. He formerly worked at Introtech. Stevens "mapped" the scene of the crash, documenting the position of the vehicle, distances, and other factors. He acknowledged that there was not "any great discrepancy of either timing or distance" in the calculations he performed and those

performed by plaintiffs' expert, Hawn. Stevens testified that at approximately 12 feet away from the curb there was contact between the tow truck and the decedent, and the contact point was on the right side of the truck, at the point of the fuel tank and the steps to the passenger compartment. Stevens also prepared a visibility study, using a camera mounted to a hard hat worn by Schmidt as he drove through the intersection of Front Street and Bagley Road. From the first run through, the pedestrian was visible in the beginning, as she is standing on the pedestrian pad just before the crosswalk. In subsequent run-throughs, however, a pedestrian at this location is not visible to the driver.

{¶13} According to Stevens, a pole in this area could obstruct the driver's view of a pedestrian. Stevens also testified that the tow truck was going into the left lane just before it stopped. Stevens opined that the accident occurred because neither the decedent nor Schmidt saw the other. According to Stevens, Schmidt could not see the decedent because of visibility problems identified in the visibility study, but the decedent would have been able to see the tow truck had she turned her head to the left and also would have been able to hear the truck coming. Stevens maintained that she had 5.6 seconds to detect and react to the tow truck but did not do so. He acknowledged on cross-examination that the driver is required to yield to pedestrians in the crosswalk.

{¶14} The parties subsequently entered into the following stipulations that were read to the jury:

> Number One, Mr. Schmidt was stopped on Front Street on or near the stop bar before getting a green light; number two, Ms. Anderson was walking

with a green light. Bagley Road had a green light for east/west traffic; while stopped at the light and making his turn, Mr. Schmidt did not see Ms. Anderson; and the fourth stipulation is that the initial impact was about 6.5 feet back from the front of the truck in the area of the front plate of the attached steps.

**{¶15}** On August 27, 2012, the jury returned a verdict in favor of plaintiff in the amount of $100,000. In special interrogatories, the jurors concluded that Schmidt's negligence was a direct and proximate cause of the damages; that each was 50 percent negligent; that "the medical bills are $30,000; $5,000 in funeral expenses; $65,000 to the estate of Priscilla Anderson, zero to the three children, for a total of $100,000." Plaintiffs appeal and assign six errors for our review.

**{¶16}** Plaintiffs' second assignment of error states:

The trial court erred by providing the jury with several inapplicable instructions to the case at bar.

**{¶17}** Within this assignment of error, plaintiffs complain that the trial court erred in giving an instruction that if a pedestrian loses her right-of-way by not proceeding in a lawful manner, then each party must use ordinary care under the circumstances. Further, plaintiffs complain that the court erred in instructing the jury that a person is negligent when they do not continue to look if, under the circumstances, a reasonably prudent person would have continued to look, and that a pedestrian must not suddenly leave the curb and walk into the path of a vehicle.

**{¶18}** In considering the appropriateness of a jury instruction, a reviewing court must view the instructions as a whole. *Atkinson v. Internatl. Technegroup, Inc.*, 106

Ohio App.3d 349, 365, 666 N.E.2d 257 (1st Dist.1995). In this matter, the court instructed the jury as follows:

> Right of way means the right of a pedestrian to proceed uninterruptedly in a lawful manner in the direction in which he or she was moving in reference to another vehicle approaching from a different direction into her path. * * *
>
> To keep her right of way as a preferred party to continue to travel uninterruptedly, the pedestrian must walk in a lawful manner. If he or she does not do so, she loses the right of way by not proceeding in a lawful manner, each party must then use ordinary care under the circumstances.
>
> A pedestrian who has the right of way has the right to travel uninterruptedly in a lawful manner. She has the right to rely upon her preferred status and to assume, in the absence of knowledge to the contrary, that others will obey the law by stopping and yielding her the right of way and not entering into her path of travel.
>
> The driver of the vehicle who does not have the right of way must permit the other party to proceed without interruption. He must not move into the intersection or that part of the intersection about to be occupied by the preferred party, if such movement would interrupt the progress of the preferred party. The party who does not have the right of way must look at such times and places in a manner that will make his looking effective, and he must wait and travel at a speed slow enough to stop and avoid entering into the path of the approaching pedestrian having the right of way. Failure to yield the right of way to a preferred party is negligence.
> If you find that the plaintiff was not walking in a lawful manner, then she lost the right of way and is not entitled to any preference over the other driver. In that event, the defendant was not required to yield the right of way and the parties * * * have equal rights and each must use ordinary care under the circumstances. If you find that the plaintiff was walking in a lawful manner, then she had the right of way and the defendant was required to yield the right of way to her.
>
> A pedestrian facing a pedestrian controlled signal indicating "walk" may proceed or walk across the roadway in the direction of the signal. And they have the right of way over all vehicles, streetcars and/or trolleys.

However, a pedestrian must not suddenly leave a curb and walk or run into the path of a vehicle which is so close that it causes immediate hazard.

The parties are required to use ordinary care in order to discover and avoid danger.

A person is negligent if they look but do not see that which would have been seen by a reasonably prudent person under the same or similar circumstances.
A person is negligent when they do not continue to look if, under the circumstances, a reasonably prudent person would have continued to look.

The driver of a vehicle intending to turn right at an intersection must approach for the turn and must make the turning movement as close as he can to the right hand curb or the right edge of the roadway.

Every person has the right to assume, in the absence of notice or knowledge to the contrary, that others on the highway will observe the law.

Action by a person based upon the assumption that others will obey the statutes is not a failure to use ordinary care, unless such person has notice or knowledge that the other party is proceeding in violation of a statute.

**{¶19}** The decision to give or omit instructions is reviewed for an abuse of discretion under the facts and circumstances of the case. *Berardi's Fresh Roast, Inc. v. PMD Ents., Inc.*, 8th Dist. Cuyahoga No. 93920, 2010-Ohio-5124, ¶ 12. A trial court has discretion whether to give a requested jury instruction based on the dispositive issues presented during trial. *Renfro v. Black*, 52 Ohio St.3d 27, 30, 556 N.E.2d 150 (1990).

### Instruction on Loss of Right-of-Way

**{¶20}** In general, under the common law, a person is negligent when he does not continue to look if under the circumstances a reasonably cautious, careful, and prudent

person would have continued to look. *See Rayoum v. Adams*, 6th Dist. Lucas No. L-97-1370, 1998 Ohio App. LEXIS 3362 (July 24, 1998).

{¶21} We further note, however, that vehicular traffic turning right must yield to pedestrians lawfully in the crosswalk. R.C. 4511.13. Further, the version of R.C. 4511.14 in effect in 2010, provided that "[p]edestrians facing [a walk signal] may proceed across the roadway in the direction of the signal and shall be given the right of way by the operators of all vehicles, streetcars, and trackless trolleys." R.C. 4511.01(UU) defines "right-of-way" as "the right * * * to proceed uninterruptedly in a lawful manner in the direction in which it or the individual is moving in preference to another vehicle * * * approaching from a different direction into its or the individual's path."

{¶22} The statutory provisions regarding the right-of-way establish a preferential status for the individual with the right-of-way. *Deming v. Osinski*, 24 Ohio St.2d 179, 181, 265 N.E.2d 554 (1970). The court explained that "relegating both to the rules of care existing at common law, entirely ignore the preferential status of the [individual with the right-of-way] and the servient status of the other vehicle." *Id.*

{¶23} The common law duties, in relation to the statutory preference for the individual with the right-of-way were further explained in *Wallace v. Hipp*, 6th Dist. Lucas No. L-11-1052, 2012-Ohio-623, ¶ 16-17, as follows:

> Even under the common-law duty to exercise ordinary care to avoid a collision, the contributory or comparative negligence of the [individual] with the right of way does not become an issue for trial without evidence that the [individual] with the right of way was also [proceeding] unlawfully. *See Lydic v. Earnest*, 7th Dist. No. 02 CA 125, 2004-Ohio-3194, applying the principles in *Morris* [*v. Bloomgren*, 127 Ohio St. 147, 187 N.E. 2

(1933), paragraph five of the syllabus], and *Deming*. For example, the Ninth District Court of Appeals held the following:

[W]hether or not the [individual with the right of way] exercised his common-law duty of ordinary care is not a consideration in determining whether [that individual] was proceeding in a lawful manner. Only after it has been found that the [individual with the right of way] is not proceeding in a lawful manner, by violating a law or ordinance, does the consideration of [that individual's] common-law duty to use ordinary care come into play. *Holding v. Chappel*, 41 Ohio App.3d 250, 252, 535 N.E.2d 350 (9th Dist.1987). *See also Roehm v. Cramer*, 1st Dist. No. C-980009, 1998 Ohio App. LEXIS 6431, 1998 WL 906342 (Dec. 31, 1998); *Mid-American Natl. Bank and Trust Co. v. Chrysler Corp.*, 6th Dist. No. 94WD007, 1994 WL 455657 (Aug. 19, 1994); *Ramos v. Kalfas*, 8th Dist. No. 64806, 1994 Ohio App. LEXIS 2171 (May 19, 1994).

Thus, [the individual with the right of way] must use ordinary care * * *.

*Deming*, 24 Ohio St.2d 179, 265 N.E.2d 554, paragraph five of the syllabus.

This duty only arises, however, after the other driver or pedestrian has failed to yield and after the [individual] with the right of way has realized that there is a clearly dangerous condition in the right of way. *See Mid-American Natl. Bank and Trust Co., supra.* Therefore, the [individual with] the right of way is not required to anticipate that this situation might occur, and may proceed along the right of way under the assumption that the right of way will be respected. *Timmins v. Russomano*, 14 Ohio St.2d 124, 127, 236 N.E.2d 665 (1968); *Deming* at 181.

**{¶24}** Similarly, in *Vavrina v. Greczanik*, 40 Ohio App.2d 129, 135, 318 N.E.2d 408 (8th Dist.1974), this court held as follows:

[The individual with the] right of way has the right to proceed uninterruptedly in a lawful manner in the direction in which it is moving in

preference to another vehicle approaching from a different direction into its path ( R.C. 4511.01 (TT)). * * * In order for a person to keep his right of way, such preferred party must * * * proceed in a lawful manner * * *.

The law gives to the [individual with] the right of way a shield, an absolute right to proceed uninterruptedly, but he forfeits the shield if he fails to proceed in a lawful manner. *Beers v. Wills* (1962), 172 Ohio St. 569, 571.

In this case, the defendant had the right of way unless he was not proceeding in a lawful manner. *Morris,* 127 Ohio St. at 156, 187 N.E. 2; *Deming v. Osinski* (1969), 21 Ohio App.2d 89, *aff'd* 24 Ohio St.2d 179.

To be proceeding in a lawful manner a person must be complying with the Ohio traffic laws.

*Accord Reinoehl v. Trinity Universal Ins. Co.*, 130 Ohio App.3d 186, 193, 719 N.E.2d 1000 (10th Dist.1998); *Walsh v. Reither*, 6th Dist. Lucas No. L-12-1214, 2013-Ohio-1840, ¶ 13.

**{¶25}** In *Carrozza v. Landis*, 10th Dist. Franklin No. 11AP-1009, 2012-Ohio-6194, ¶ 15, the court also recognized that "[i]n order to proceed in a lawful manner, a person must be complying with Ohio traffic laws." *Id.*, citing to *Cramer v. Detrick*, 2d Dist. Montgomery No. 13583, 1993 Ohio App. LEXIS 5363 (Nov. 10, 1993), and *Morris,* 127 Ohio St. 147, 187 N.E. 2. *Accord Fedj v. Klinkiewicz*, 8th Dist. Cuyahoga No. 39570, 1979 Ohio App. LEXIS 10019 (Oct. 25, 1979).

**{¶26}** Additionally, the law presumes that the individual with the right-of-way is proceeding lawfully, meaning in compliance with all Ohio traffic laws. *Liegel v. Bainum*, 12th Dist. Clermont No. CA2011-06-049, 2011-Ohio-6022, ¶ 13; *In re Neill*, 160 Ohio App.3d 439, 2005-Ohio-1696, 827 N.E.2d 811, ¶ 10 (3d Dist.).

**{¶27}** A defendant who asserts that the opposing party's right-of-way has been forfeited is required to present evidence rebutting the presumption that the opposing party was proceeding in a lawful manner. *Liegel*; *In re Neill,* citing *State v. Harris*, 12th Dist. Clinton No. CA91-06-012, 1991 Ohio App. LEXIS 6316 (Dec. 30, 1991).

**{¶28}** Thus, as long as the decedent proceeded lawfully and without violating any statute or ordinance, she was entitled to maintain her statutory right to proceed uninterruptedly while crossing the intersection. In order to show that the decedent's right-of-way was forfeited, the defendant was required to present evidence that she violated the traffic laws. Absent that showing, the decedent's common-law duty to exercise ordinary care and any contributory or comparative negligence were not proper issues for the jury.

**{¶29}** This showing was not made herein. The defense did not demonstrate that the decedent violated any traffic law or ordinance by which she would forfeit her preferential status. The evidence of record indicated that the tow truck was stopped near the stop bar, which is about 11 feet back from the crosswalk. The evidence further demonstrated that the decedent began to cross in the crosswalk once the light in her direction changed. She was permitted to proceed under the assumption that the right-of-way will be respected and was not required to anticipate that the tow truck operator, who was behind her, would violate her right-of-way. In short, the trial court conflated the decedent's statutory right-of-way to proceed uninterruptedly in a lawful manner, in preference to another vehicle, with a general common law duty to use ordinary

care, in the absence of any evidence to establish that her right-of-way as forfeited. The court's instruction that the parties are required to use ordinary care in order to discover and avoid danger erroneously relegated both parties to the rules of care existing at common law. The court's instructions regarding the common law obligations and comparative negligence were erroneous as a matter of law.

### Continue to Look

{¶30} Pedestrians with the statutory right-of-way have an absolute right to proceed uninterruptedly in the direction in which they are moving and need not look for vehicles violating the right-of-way. *Havens v. Precision Strip*, *Inc*., 2d Dist. Miami No. 2007 CA 1, 2007-Ohio-4082, ¶ 10; *Lydic v. Earnest*, 7th Dist. Mahoning No. 02 CA 125, 2004-Ohio-3194, ¶ 3-33. *See also Deming*, 24 Ohio St.2d 179, 181 (rejecting the notion that individual with the right-of-way must "look, look effectively, and continue to look and remain alert."); *Higgins v. Bennett*, 12th Dist. Clinton No. CA99-08-022, 2000 Ohio App. LEXIS 827 (Mar. 6, 2000) (individual with statutory right-of-way has no duty to keep an "effective look out" for those violating right-of-way). The individual with the right-of-way is not required to anticipate that others will enter his or her right-of-way and is entitled to proceed under the assumption that the right-of-way will be respected. *Wallace,* 6th Dist. Lucas No. L-11-1052, 2012-Ohio-623, at ¶ 13.

{¶31} Moreover, there is no duty to look for danger unless there is reason to expect it. *Timmins*, 14 Ohio St.2d 124, 127, 236 N.E.2d 665; *Hawkins v. Shell*, 8th Dist.

Cuyahoga No. 72788, 1998 Ohio App. LEXIS 2406 (June 4, 1998); *Markley v. Knutson*, 3d Dist. Marion No. 9-96-29, 1996 Ohio App. LEXIS 4313 (Sept. 26, 1996).

**{¶32}** In this matter, the court instructed the jury in relevant part that:

The parties are required to use ordinary care in order to discover and avoid danger.

A person is negligent if they look but do not see that which would have been seen by a reasonably prudent person under the same or similar circumstances.

A person is negligent when they do not continue to look if, under the circumstances, a reasonably prudent person would have continued to look.

Every person has the right to assume, in the absence of notice or knowledge to the contrary, that others on the highway will observe the law.

Action by a person based upon the assumption that others will obey the statutes is not a failure to use ordinary care, unless such person has notice or knowledge that the other party is proceeding in violation of a statute.

**{¶33}** We conclude that these instructions erroneously failed to convey to the jury that a pedestrian with the statutory right-of-way is not required to continuously look for drivers violating the right-of-way. In addition, the court's charge did not properly reconcile the statutory preferential treatment of the person in the right-of-way and the common law requirement of exercising due care, in order to properly instruct the jury that the pedestrian in the right-of-way has no duty to look for danger unless there is reason to expect it, and that the pedestrian must exercise due care to avoid a collision in her right-of-way after discovering a dangerous or perilous situation. Therefore, the trial court erred as a matter of law.

**{¶34}**     Moreover, in this matter, the evidence demonstrated that the tow truck was stopped near the stop bar, which is about 11 feet back from the crosswalk, and had the better opportunity to see the decedent, who was forward of the truck.   The relevant question for the jury was not whether the tow truck operator saw the decedent, but whether he should have as he made a right-hand turn into her path of travel.   Conversely, the tow truck was essentially behind the decedent as she started to cross, and therefore, she was not in a good position to determine whether the tow truck operator would violate her right-of-way.

**{¶35}** This portion of the assignment of error is therefore well taken.

**Suddenly Leaving the Curb Pursuant to R.C. 4511.46(B)**

**{¶36}** Under R.C. 4511.46(B),

> [n]o pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle, * * * which is so close as to constitute an immediate hazard.

Thus, pedestrians are "prohibited by law from leaving the curb or place of safety and entering the right of way of a motor vehicle." *Joyce v. Rough*, 6th Dist. Lucas No. L-10-1368, 2011-Ohio-3713, ¶ 16.     As noted previously, under R.C. 4511.13, vehicular traffic facing a circular green signal may proceed straight through or turn right, but the vehicle turning right shall yield the right-of-way to pedestrians lawfully within the adjacent crosswalk.   Pedestrians with the right-of-way have an absolute right to proceed uninterruptedly in the direction in which they are moving and need not look for vehicles

violating the right-of-way. *Havens*, 2d Dist. Miami No. 2007 CA 1, 2007-Ohio-4082. Further, once the pedestrian established her right-of-way in a crosswalk, the driver has a duty pursuant to R.C. 4511.46(A) to yield and the pedestrian is not deemed to have left a place of safety pursuant to R.C. 4511.46(B). *Johnson v. Albers*, 1st Dist. Hamilton No. C-110628, 2012-Ohio-1367, ¶ 27-28; *Lockwood v. Morgan*, 12th Dist. Butler No. CA90-05-092, 1991 Ohio App. LEXIS 5399 (Nov. 12, 1991).

{¶37} Here, the trial court instructed the jury that:

> A pedestrian facing a pedestrian controlled signal indicating "walk" may proceed or walk across the roadway in the direction of the signal. And they have the right of way over all vehicles, streetcars and/or trolleys.

> However, a pedestrian must not suddenly leave a curb and walk or run into the path of a vehicle which is so close that it causes immediate hazard.

{¶38} In this matter, the court's charge failed to instruct the jury that once the pedestrian established her right-of-way in a crosswalk, the driver has a duty pursuant to R.C. 4511.46(A) to yield and the pedestrian is not deemed to have left a place of safety pursuant to R.C. 4511.46(B). Therefore, this portion of the charge is erroneous as a matter of law.

{¶39} Moreover, Schmidt testified that he simply did not see the decedent. The evidence indicated that Schmidt was at the "stop bar" at the red light on Front Street at Bagley Road, and the decedent was at the pedestrian pad immediately adjacent to crosswalk for traversing Bagley Road. After the light changed, Schmidt began to turn, and the decedent crossed the street. The evidence demonstrated that she had established her right-of-way because she was 12 to 14 feet into the crosswalk when she was struck, so

she cannot, as a matter of law, be deemed to have left a place of safety pursuant to R.C. 4511.46(B). Rather, the evidence indicated that the decedent had the right-of-way in the crosswalk, and therefore, had an absolute right to proceed uninterruptedly. The decedent established her right-of-way, in a crosswalk, with the light, and therefore, the tow truck driver had the duty pursuant to R.C. 4511.46(A) to yield as a matter of law. The decedent did not leave a place of safety pursuant to R.C. 4511.46(B). Indeed, even the expert retained by the defense admitted that the expert acknowledged that this instruction was inapplicable herein. (Tr. 336.) Therefore, in this matter, the trial court committed prejudicial error in instructing the jury on the issue of the decedent suddenly leaving the curb.

{¶40} The second assignment of error is well taken.

{¶41} Based on our disposition of the second assignments of error, the remaining assignments of error are moot. *See* App.R.12(A)(1)(c).

{¶42} Judgment reversed and remanded.

It is ordered that appellants recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

MARY EILEEN KILBANE, JUDGE

KENNETH A. ROCCO, J., CONCURS (SEE SEPARATE OPINION);
MARY J. BOYLE, P.J., DISSENTS (SEE SEPARATE OPINION)


KENNETH A. ROCCO, J., CONCURRING:

{¶43} I write separately in this case for two reasons. First, I believe appellants' first assignment of error also has merit. Because the issue may arise again in the trial court, I would address it to prevent the error from reoccurring.

{¶44} Second, I wish to convey in the strongest terms my agreement with the disposition made by the majority opinion. I quake at the thought that the opinion expressed in the dissent would become the law.

{¶45} Appellants argue in their first assignment of error that the trial court abused its discretion in permitting appellees to cross-examine a witness concerning a "collateral source," i.e., Medicare. Appellants correctly assert this line of questioning, even if it could be said to have been permitted by R.C. 2315.20(A), which it is not, lacked a proper foundation.

{¶46} In *Adae v. State*, 10th Dist. Franklin No. 12AP-406, 2013-Ohio-23, the court recently summarized the "collateral source" rule as follows:

In general, the appropriate measure of damages in a tort action is that which will make the plaintiff whole. See *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, ¶ 11, 857 N.E.2d 1195, citing *Pryor v. Webber*, 23 Ohio St.2d 104, 107, 263 N.E.2d 235 (1970). As a corollary, the state has a legitimate interest in preventing double recoveries by tort victims. *McKinley v. Ohio Bur. of Workers' Comp.*, 170 Ohio App.3d 161, 2006-Ohio-5271, ¶ 18, 866 N.E.2d 527 (4th Dist.), citing *Holeton v. Crouse Cartage Co.*,

92 Ohio St.3d 115, 121-22, 2001-Ohio-109, 748 N.E.2d 1111 (2001). Under the common-law collateral-source rule, evidence of compensation a plaintiff received from collateral sources was *not admissible to diminish the damages a tortfeasor was required to pay for his negligent act*. *Pryor* at paragraph two of the syllabus. Accordingly, under the collateral-source rule, a plaintiff who has, for example, had his medical expenses paid by another may still recover full damages for those expenses from a defendant who is liable for the plaintiff's injury. *Id.* at 108, quoting 2 Harper and James, *The Law of Torts*, Section 25.22 at 1343. "'To this extent, [the] plaintiff may get double payment on account of the same items.'" *Id.* In this way, the collateral-source rule operated as an exception to the traditional measure of damages and "'prevent[ed] the jury from learning about a plaintiff's income from a source other than the tortfeasor'" so that *a tortfeasor would not be given an advantage from third-party payments to the plaintiff*. *Jaques v. Manton*, 125 Ohio St.3d 342, 2010-Ohio-1838, ¶ 7, 928 N.E.2d 434, quoting *Robinson* at ¶ 11.

State legislatures, including the General Assembly, have wrestled with statutory approaches to the collateral-source rule in the evolving landscape of tort law. See Hanson, *Ohio's Collateral Source Rule Following Robinson v. Bates and the Enactment of Ohio Revised Code Section 2315.20*, 40 U.Tol.L.Rev. 711, 720-21 (2009). Since *Pryor*, which defined the Ohio collateral-source rule, the General Assembly has enacted many statutes to limit the effect of the rule. * * * Currently, in non-medical-malpractice cases against private defendants, R.C. 2315.20(A) provides that a "defendant may introduce evidence of *any amount payable as a benefit* to the plaintiff as a result of the damages that result from an injury, death, or loss to person or property that is the subject of the claim upon which the action is based," *unless the collateral source has a right of subrogation.* * * * R.C. 2315.20 addresses the admissibility of evidence.
(Emphasis added.)

{¶47} Appellees' attorney asked Dale Anderson on cross-examination if he were aware that Medicare had a "lien" against his mother's estate "only for $29,078.37," thus implying that the decedent's medical expenses (and, by extension, her injuries resulting from the accident) were minor (despite the fact that she died). Surely, a collateral source's "right" to institute a lien may be considered to be inadmissible pursuant to R.C. 2315.20(A) in the same manner as a right to subrogation.

{¶48} Moreover, even if a collateral source has no right of subrogation, R.C. 2317.421 codifies a rebuttable presumption that the amount charged by the medical

provider is the reasonable value of the services rendered. If the defendant wishes to overcome the presumption, the defendant must present cognizable evidence to that effect.

The court in *Moretz v. Muakkassa*, 9th Dist. Summit No. 25602, 2012-Ohio-1177 (currently on appeal to the Ohio Supreme Court) observed:

> As the reasonable value of medical services is outside the common knowledge of laymen, expert testimony is necessary as a foundation for presentation of this evidence to the jury. See Evid. R. 702(A). For plaintiffs seeking to present amounts charged as evidence of the reasonable value of medical services rendered, the General Assembly has codified a rebuttable presumption in that regard, obviating the need for expert testimony. R.C. 2317.421. Under the statute, in the absence of contrary evidence, the amount charged will be sufficient to prove the reasonable value of the medical services. Defendants seeking to introduce evidence of write-offs do so in an effort to contradict that statutory presumption.

> Defendants offer evidence of write-offs in hopes that juries will determine the reasonable value of the medical services was actually equal to the amount charged minus the amount written off by the provider. See *Evans v. Thobe*, 195 Ohio App.3d 1, 2011 Ohio 3501, at ¶ 18, 958 N.E.2d 616 (2d Dist). Despite the Ohio Supreme Court's holding in *Jaques* [125 Ohio St.3d 342, 2010-Ohio-1838, 928 N.E.2d 434] that such evidence is relevant and admissible, there is no presumption or shortcut available to allow such evidence to be introduced without a proper foundation.

{¶49} In this case, appellees' attorney *told* Anderson during cross-examination that Medicare had a lien against his mother's estate in the amount of $28,400.27. Appellees offered no evidence of this "fact." The only documents introduced into evidence indicated the decedent was billed for $173,615.32 in medical expenses. Consequently, the trial court should have sustained appellants' objection to this line of questioning. I believe appellants' first assignment of error should be sustained.

{¶50} As for my second reason to write separately, while I realize that truck drivers may be the "kings of the road," a crosswalk controlled by a signal device is the only safe place that a pedestrian

has. Thus, if the dissent had its way and the jury instructions given by the trial court in this case were to stand, such a crosswalk would no longer be a safe haven.

**{¶51}** Appellees in this case based their defense on the assertion that the decedent failed to exercise ordinary care for her own safety. According to their cross-examination of the appellants' witnesses, and to the evidence appellees themselves introduced, the decedent, *even if she were already off of the ramp and actually on the crosswalk*, should have stopped her progress across Bagley Road when she heard the tow truck's air brakes disengage, and she should have seen out of her peripheral vision that the truck was starting to make its turn.

**{¶52}** Appellees went even further: indeed, before even starting across, the decedent should have looked behind her and to her left, noticed the truck was waiting to make its turn, and yielded to it. Thus, the decedent's heedlessness of these visual and subsequent auditory warnings made her comparatively negligent with Schmidt.

**{¶53}** Appellees made these arguments despite the facts that the decedent was 75 years old, no one knew what state either her hearing or her peripheral vision was in, *she was in a marked crosswalk with a signal that permitted her to cross at the time Schimdt's truck struck her*, and she came to rest underneath the truck between *12 to 14 feet from the curb*. Apparently, she was amazingly spry for an elderly woman.

**{¶54}** A review of the record reveals the trial court was taken in by these arguments, because, although at the conclusion of the appellees' case, the trial court *granted* appellants' motion for a directed verdict against appellees on "the issue of

proximate cause,"[1] the court nevertheless inexplicably began its jury instructions as follows:

> * * * It is your sworn duty to accept these instructions and apply the law as I give it to you. * * *
>
> The estate of Priscilla Anderson claims that Bob Schmidt was negligent in the operation of his motor vehicle. Therefore, the issue you must decide is whether the defendant was negligent in any respect. And, *if so, was the negligence of the defendant a proximate cause of any harm sustained by the plaintiff.*
>
> The defendants also claim that Priscilla Anderson was comparatively negligent. So you must decide whether the plaintiff was negligent in any respect. And, also, *did the negligence of the plaintiff contribute to proximately cause her own injury.*
>  (Emphasis added.)

{¶55} The foregoing illustrates the trial court's own confusion after listening to the persuasive power of appellees' attorney. The trial court thereafter provided an instruction based upon R.C. 4511.46(B), which applies only when "traffic control signals are not in place."

{¶56} In this case, however, only R.C. 4511.13(A) applied. The relevant portion of that statute states that vehicles "shall" yield the right of way to pedestrians who are "lawfully within" the crosswalk. Conversely, a pedestrian must yield the right of way only to vehicles that are "within" the intersection "or so close as to create an *immediate* hazard *at the time that the green signal indication is first displayed.*" (Emphasis added.) Schmidt himself testified that he proceeded into his turn only when the light turned green; he maintained that he did not begin his turn on red. If he had been

---

[1]From the facts presented in this case, the trial court should have directed a verdict in appellants' favor on the issue of liability, rather than merely "proximate cause." *See, e.g., Balish v. Ohio Dept. of Transp.,* 10th Dist. Franklin No. 01AP-668, 2002-Ohio-620.

looking where he should have been looking at the time he began his turn, therefore, he would have seen the decedent in his field of view.

{¶57} The dissent sides with appellees. Therefore, if the dissent held sway in this appeal, the truck driver, who had the better view due to the height of the cab and his perspective of looking to his right to make a right turn, would be absolved of the majority of liability for his actions. Pedestrians would, perhaps literally, be a dying breed.

MARY J. BOYLE, P.J., DISSENTING:

{¶58} I respectfully dissent. It is my view that the trial court properly charged the jury based on the evidence presented. I cannot agree that a new trial is warranted under the facts of this case.

{¶59} While it is true that Anderson enjoyed a preferential status under the law and had the right of way, we cannot say that her right was absolute based on the facts of this case. In this case, Schmidt presented evidence that, if believed, established that Anderson should have seen Schmidt's 50-ton tow truck turning into her right of way, creating an extremely perilous situation. Indeed, according to Annette Washington — an eyewitness to the accident — Anderson was not yet in the crosswalk at the time that Schmidt began to turn right into the center westbound lane on West Bagley Road after the light turned green. Indeed, Washington testified that Anderson did not enter the crosswalk until after Schmidt had begun to turn right. The defense further established that Schmidt was driving a four-axle, 50-ton wrecker tow truck — a vehicle that displays *eight* visible flashing lights located on the passenger side of the vehicle when the turn

signal is activated. According to a photograph taken by the Berea Police Department after the accident, the turn signals of the truck were still flashing. The defense also established that this type of vehicle is not silent. As explained by both Schmidt and the defense's expert, Richard Stevens, Schmidt's truck makes the normal sounds of a large diesel engine, which includes a "loud hissing sound" when the driver's foot is removed from the brakes as a result of air releasing from the brake chambers.

{¶60} Taking into consideration the size and sound of the vehicle, coupled with the fact that the tow truck had began turning with it lights flashing *prior* to Anderson even entering the crosswalk, I find that these facts warranted a comparative negligence and duty to look instruction. Indeed, these circumstances should have alerted Anderson to an obvious danger despite her having the right of way. The refusal to provide a comparative negligence instruction in this case would have been tantamount to saying that the law rewards pedestrians who blindly ignore obvious perils. The Ohio Supreme Court has made clear that this is not the case. *See, e.g., Horwitz v. Eurove*, 129 Ohio St. 8, 193 N.E. 644 (1934) (recognizing that even though the plaintiff-pedestrian clearly had the right of way, "such pedestrian is still under the legal duty to exercise ordinary care for his own safety; and whether he has done so in a particular case is a jury question where the evidence is conflicting"); *Grass v. Ake*, 154 Ohio St. 84, 88, 93 N.E.2d 590 (1950) (contributory negligence instruction is necessary when the evidence reveals that pedestrian with the right of way "utterly disregarded the circumstances surrounding her as she crossed Bedford Avenue and shut her eyes to the dangers of automobile traffic").

{¶61} Contrary to the majority's assertion, I find that Anderson's common-law duty to exercise ordinary care arose in this case because a reasonable juror could conclude that Anderson ignored an obvious dangerous situation, despite having the right of way. Notably, it is stipulated that Schmidt did not see Anderson. And based on the defense's witnesses, the jury could have found that it was impossible for Schmidt to see Anderson when she entered the crosswalk. It is further stipulated that the tow truck did not hit Anderson head-on — the initial impact was about 6.5 feet back from the front of the truck. Like the Ohio Supreme Court in *Ake*, I refuse to find as a matter of law that a pedestrian, who has the right of way, is proceeding in a "lawful" manner when such pedestrian blindly ignores an obvious peril.

{¶62} Finally, I do not agree that the trial court erred in providing an instruction on R.C. 4511.46(B) regarding a pedestrian suddenly leaving a curb. Evidence that Schmidt had already begun to turn prior to Anderson entering the crosswalk and that the impact occurred only 3.4 seconds after Anderson started to walk forward from the pedestrian pad of the sidewalk supported the instruction.

{¶63} Accordingly, because I find that the trial judge properly instructed the jury in this case, I would overrule the second assignment of error and affirm the jury verdict in its entirety.